**CHURCHFIELD v. PAUL SNYDER, Inc.**

**Civ. A. No. 3900.**

United States District Court
M. D. Pennsylvania.

Feb. 7, 1952.

2. See 1948 Revised Criminal Code, 18 U.S.C.A. § 3287.

442

Irwin Benjamin (of Hurwitz, Klein & Meyers), Harrisburg, Pa., C. Max Ivins, Philadelphia, Pa., for plaintiff.

William S. Bailey, John B. Pearson (of Storey & Bailey), Harrisburg, Pa., for defendant.

WATSON, Chief Judge.

This is an action to recover damages for personal injuries sustained by the plaintiff when an automobile in which she was a passenger collided with an auto carrier owned by the defendant corporation and being driven by one of its employees. At the trial of the case the jury rendered a verdict in favor of the defendant. Plaintiff now moves for a new trial.

Plaintiff first contends that the verdict is contrary to law, but fails to state why. The Court will therefore consider it as being merely a formal objection and really part of plaintiff's second contention that the verdict was against the weight of the evidence. In passing upon this contention, the Court must consider the evidence in the light most favorable to the defendant. Masterson v. Pennsylvania R. Co., 3 Cir., 1950, 182 F.2d 793. So viewed the evidence tended to establish the following facts:

Plaintiff was one of three persons in an automobile enroute from Wilmerding to Philadelphia, Pennsylvania, and being driven by plaintiff's brother, Richard Churchfield. When they left Wilmerding around midnight, December 28–29, the weather was clear and dry, but a freezing rain had begun to fall by the time they arrived at Midway, located on the Pennsylvania Turnpike, and driving conditions became treacherous. After leaving the Turnpike, they proceeded eastwardly on Route 11 toward Harrisburg. About 6:00 A.M., at a point about 5 miles west of Camp Hill, the Churchfield car skidded out of control, moving across the highway from the eastbound lane into the westbound lane, and collided with defendant's auto carrier which was traveling in a westerly direction.

At the point of collision, Route 11 was a three-lane highway, the two outer lanes being concrete and the center lane macadam. From the point of the accident, there was a straight stretch of highway for a considerable distance in each direction, but there was a descending grade toward the east. The crest of the grade was about 250 feet west of the scene of the accident, and the bottom of the grade some distance to the east. The Churchfield car was proceeding downgrade, and defendant's auto carrier was proceeding up the grade. The point of impact took place in the westbound or northern lane, which was defendant's side of the road. The Churchfield car was struck on the right side, made a half-spin and came to rest on the berm of the highway with the rear of the car resting against a fence on the north side of the highway and the front of the car facing the highway. Defendant's vehicle was hit in the front and came to rest in its own lane about 42 feet from the point of impact.

There is a clear conflict in the evidence as presented by the respective parties on the questions of why the Churchfield car was on the wrong side of the road and when it reached that position. Defendant's driver testified that he was driving about 15 to 20 miles per hour, with his right wheels on or close to the berm; it was dark and the highway was slippery. He noticed the Churchfield car coming over the hill in an easterly direction and it appearing to be out of control, he applied his brakes lightly to slow down. He stated, "When I saw this car I would say it was approximately 200 to 250 feet from me, and, as I said, I applied the brakes. I slowed down to possibly ten or fifteen miles per hour. At this point it was in the center lane, and it was spinning to the left, and it came over in front of me with the front of the automobile pointing north or straight across the highway in my lane, and it was picking up speed because it was on grade, and it was very icy. The front of my vehicle collided with the exact center of this automobile". Defendant's driver also testified that both of the vehicles were moving at the time of impact. The driver's testimony was corroborated in its details as to speed and course of travel prior to the accident by the driver of one of two trucks which were traveling to the rear of defendant's vehicle.

Plaintiff's brother, who was the driver of the Churchfield car, gave a different version of the accident. He stated that he was traveling at a speed of 15 miles per hour with his right wheels off on the berm of the road, and as he approached the crest of the hill he noticed the headlights of an oncoming vehicle about 1000 to 1200 feet in the distance. After passing the crest of the hill, he observed that the approaching vehicle was straddling the divider line between the north lane and the center lane of the highway, and then veered over to the southern or eastbound lane. Churchfield then blew his horn and applied his brakes, and as a result his car went out of control, made two complete revolutions and came to rest on the north or westerly lane of traffic, with the front of the car pointing north. When the car came to rest, the defendant's carrier was still 200 to 250 feet

away, but was then swinging back to its own side of the road, and continued to so proceed until it hit the right side of the Churchfield car. No witness other than Churchfield testified that defendant's vehicle was on the wrong side of the road. Plaintiff, however, did testify that their car had come to a complete stop before it was struck by defendant's carrier.

From this conflicting testimony there arose three questions of fact, (1) Was defendant's carrier traveling on the wrong side of the highway? (2) Should defendant's driver have brought his vehicle to a complete stop when he observed that the Churchfield car was skidding and apparently out of control? and (3) Had the Churchfield car come to a complete stop in the westerly lane for a sufficient length of time to allow defendant's driver to avoid the collision?

██ It is well settled that a new trial will not ordinarily be granted on the ground that the verdict is against the weight of the evidence where the evidence is conflicting and the jury might have found for either party. Reithof v. Pittsburgh Rys. Co., 1949, 361 Pa. 489, 65 A.2d 346. On the conflicting evidence it was clearly for the jury to sift, weigh, reject and reconcile the testimony offered and to finally determine whether plaintiff's injuries were caused by the negligence of defendant's driver. Though the jury could have decided the case either way it resolved the matter in favor of the defendant.

Plaintiff's next contention is that the Court erred in refusing to charge the jury as follows: "If you find from the evidence that both the driver of the tractor-trailer, Jacob G. Weldon, and the driver of the car, Richard Churchfield, were both negligent, then your verdict must be for the Plaintiff, Hilda Gillerlain and against the Defendant, Paul Snyder, Inc."

██ The above request was first submitted to the Court orally after the Court had already charged the jury, and therefore did not comply with Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C., which provides in part, "At the close of the evidence or at such earlier time during the

trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests."

■ Despite this failure to comply with Rule 51, the Court gave serious consideration to the request not only at that time, but once again when a similar request was submitted in writing when the jury had returned for additional instructions. In both instances, the Court felt that the requested instruction was unnecessary and would only tend to confuse the jury. The jury had been instructed in very clear language that "if you find that the Defendant was negligent, and that such negligence was the proximate cause of the accident, then you must find a verdict for the Plaintiff and against the Defendant". The driver of the Churchfield car was not a party to the action, and it was therefore immaterial whether or not he was negligent. The only issue in the case was whether or not defendant's driver was negligent.

A similar question arose in Struppler v. Rexford, 1937, 326 Pa. 545, 192 A. 886, 887, where plaintiff collided with a parked truck and immediately thereafter another truck ran into plaintiff's car. Plaintiff sued the owner of the parked truck with which he collided, but did not sue the owner of the truck that ran into him. There was a verdict for the defendant, and on appeal plaintiff contended that the court committed a reversible error when it refused his request to instruct the jury that if defendant "was guilty of negligence and the accident happened by reason of that negligence and the negligence of another, the plaintiff being free from contributory negligence, the plaintiff could recover from the defendant damages in this case". The Pennsylvania Supreme Court, in affirming the judgment, stated, "Having charged that if the defendant was negligent as plaintiff contended, and the negligence caused the accident and plaintiff was free from contributory negligence, *we think it was immaterial, on this record, that the judge did not also say that even if the defendant was negligent and somebody else was negligent too, the defendant was responsible; it was implied in* *what had already been said to the jury*. A trial judge is not bound to adopt the language of counsel; he may choose his own form of expression, and if the subject is fully and correctly covered in the charge, there is no error. Hanratty v. Dougherty, 71 Pa.Super. 248; Tamres v. Reed, 109 Pa. Super. 28, 165 A. 538." (Emphasis supplied.)

In its motion for new trial plaintiff listed six other reasons why it should be granted, but failed to press the same at the time of argument or in its brief. The Court nevertheless has examined them, but finds them without merit.

An order denying plaintiff's motion for new trial will be filed herewith.