511 F.2d 138
 Linda LANDRY, Individually and as administratrix of her
minor children, Kenneth Paul Landry and Tracy
James Landry, Plaintiffs-Appellants,
Cross-Appellees,
v.
TWO R. DRILLING COMPANY et al., Defendants-Appellees,
Cross-Appellants.
 No. 73--3900.
 United States Court of Appeals,
Fifth Circuit.
 April 9, 1975.
Rehearing Denied May 12, 1975.
Rehearing and Rehearing En Banc Denied
Aug. 13, 1975.
517 F.2d 675.
 
 J. Clem Drewett, Lake Charles, La., Louis R. Koerner, Jr., New Orleans, La., for plaintiffs-appellants.
 Joseph L. Waitz, Houma, La., Gerard T. Gelpi, New Orleans, La., for defendants-appellees.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before TUTTLE, RONEY and GEE, Circuit Judge.
 TUTTLE, Circuit Judge:
 
 
 1
 This is an appeal and cross-appeal from special jury verdicts of over $300,000 in favor of the plaintiff, Linda Landry, in her capacity as personal representative for herself and her two minor children. The awards were for injuries arising out of two separate mishaps suffered by her seaman husband Lloyd--one resulting in his death. The jury verdicts were for $7,500 for an injury to the seaman's hand, and $575,000 for his death. Of the $575,000 originally awarded, $175,000 was awarded to the plaintiff in her individual capacity, and $200,000 for each of her children. The jury found the decedent was 20% contributorily negligent and consequently Mrs. Landry's award was automatically reduced by the trial court to $140,000. Rather than specifically reducing each child's award by 20%, the trial court considered the 20% contributory negligence of the decedent in remitting each award by 50%--to $100,000 for each child. The remittitur was vigorously protested and is one of the issues on appeal. Thus, the final award for the plaintiff totalled $347,500.
 
 
 2
 Neither party is satisfied. The plaintiff wants the judgment increased, because she contends that the remittitur was improper and further that the trial court erred in refusing to allow recovery for non-pecuniary loss under the teaching of Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). The defendant cites several alleged errors in the trial court's admission of evidence and instructions to the jury, and adds that the damages awarded the children were 'grossly excessive.'
 
 
 3
 We affirm the judgment of liability against the defendant, but vacate the award of damages and remand to the trial court for further proceedings as herein directed.
 
 I.
 
 4
 Trial of this case required four days of extensive testimony, much of it concerning the technical details of the drilling operation where the decedent worked. We rehearse only a brief summary of the facts, addressed to points on appeal.
 
 
 5
 Lloyd Landry was a 27-year-old roughneck/seaman employed by the defendant, Two R. Drilling Co., on its vessel, Rig No. 6, a submersible oil-drilling barge, located in Horseshoe Bayou, near Centerville, St. Mary Parish, Louisiana. He had been so employed for approximately one year, was regarded by his superiors as a 'good worker,' and was being paid $11,000 per annum.
 
 
 6
 On September 19, 1971, two fingers of Landry's right hand (he was left-handed) were injured when struck by a sledge-hammer wielded by a fellow employee of the company. Both fingers were badly lacerated, and the middle finger had a chipped bone. The company does not contest on appeal that its negligence caused these injuries. Landry underwent treatment consisting of suturing and medication. The attending physician prescribed Firoinal No. 3[1] to alleviate pain. He later testified that the medication is not extremely strong and normally does not impair the patient's functions.
 
 
 7
 Landry returned to work on September 26, 1971. He was wearing his right arm in a web-type sling. Early that morning, he washed off the shale shaker on the upper deck of the rig with the pressure hose provided for the task. The deck was not enclosed at this point, but a three-foot high metal guard railing surrounded the area. (The lower deck immediately below the shale shaker was also unenclosed and had no guard railing.) Landry was told by the rig's superintendent not to continue the job, but to go into the galley and watch television if he wished. The rig's tool-pusher, who is second in command to the superintendent gave Landry a similar order. He told Landry not to resume his regular duties, lest he be injured, but permitted him to bring ice and root beer to the workers in the area. However, the driller, Landry's immediate superior, told Landry a short time later to watch the shale shaker and rinse it off if necessary. Landry was last seen that day in the pump room shortly after 3 p.m., but only a few minutes earlier he had been observed rinsing off the shale shaker with the pressure hose. At 5:30 p.m., Landry did not answer the roughneck's whistle, and a search of the rig began. The entire rig was shut down at 8 p.m., and Landry's body was found at 10 p.m. in shallow water ten to twelve feet from the rig and approximately 24 feet from the deck below the shale shaker. The autopsy showed time of death to be 4 p.m.
 
 
 8
 Landry's widow brought a wrongful death action, in her capacity as personal representative[2] for herself and her two minor children aged five and two, under the Jones Act, 41 Stat. 1007, 46 U.S.C. § 688, and general maritime law. The dual cause of action alleged negligence and/or unseaworthiness of the rig, respectively, as the cause of Landry's hand injury and of his death. The jury found the defendant negligent with respect to the hand injury and found the defendant negligent, and its vessel unseaworthy, with respect to the death. Damages were awarded as described above.
 
 II.
 
 9
 The defendant assigns two errors, primarily[3], with respect to the imposition of liability upon it for Landry's death: it contends that the trial court should have allowed cross-examination of the plaintiff's expert witness on the applicability to the vessel of Coast Guard safety regulations on handrailings, and it contends that there is no evidence in the record of any causal connection between the vessel's allegedly inadequate handrailing and Landry's drowning. We disagree with the defendant on both points.
 
 
 10
 The plaintiff's expert witness, a qualified marine surveyor and safety expert, testified that in his opinion the handrailings on the rig near the shale shaker were inadequate. He did not rest his conclusion on the Coast Guard regulations, however. He made his conclusion on the basis rather of his experience and expertise in the field. He mentioned the regulations in passing only as one factor, but he did not point to them as a decisive factor and explicitly disavowed official knowledge of their applicability to the rig. In short, the applicability of the regulations were not in issue inasmuch as his testimony was concerned, and it was within the trial court's discretion to deny cross-examination on their applicability.
 
 
 11
 The second point requires only a brief answer as well. The burden on the plaintiff to prove proximate cause in actions based on the Jones Act and general maritime law is very light. Indeed, the most noted commentators in the field have called it 'featherweight.' Gilmore & Black, Admiralty (1957), § 6--36, p. 311. The jury in such cases is entitled to make 'permissible inferences from unexplained events,' Johnson v. United States, 333 U.S. 46, 49, 68 S.Ct. 391, 92 L.Ed. 468 (1948), whether the case is brought under the Jones Act, id., or under general maritime law, Alaska Steamship Co., Inc. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 per curiam (1954). The Supreme Court has repeatedly said that it is not the function of the court in Jones Act and analogous cases to 'search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that proof gives equal support to inconsistent and uncertain inferences.' Tennant v. Peoria & P.U.R. Co., 321 U.S. 29, 35, 69 S.Ct. 409, 412, 88 L.Ed. 520 (1944); Schulz v. Penn. R. Co., 350 U.S. 523, 526 n.8, 76 S.Ct. 608, 100 L.Ed. 668 (1956).
 
 
 12
 The record in this case clearly demonstrates that the handrailings where or near where Landry worked were inadequate at some places, and nonexistent at others. The record further shows that his body, with the sling still fettering his right arm, was found in water adjacent to these areas. There was thus sufficient evidence for the jury to find that the lack of handrailings caused Landry's drowning, at least in part. Were we to select another possible inference and hold that there was inadequate evidence of causation, as the defendant asks us to do, we would be 'taking the case from the jury' in clear contravention of well-established principles that have been frequently reiterated by the Supreme Court. Tennant v. Peoria & P.U.R. Co.,supra.
 
 
 13
 The judgment of liability against the defendant is accordingly affirmed.
 
 III.
 
 14
 The trial court instructed the jury, over the plaintiff's objection, that with respect to Landry's death only pecuniary damages were recoverable and that the plaintiff was not to be compensated for loss of love and companionship. During the pendency of this appeal, the Supreme Court held that loss of 'society' was recoverable in wrongful death actions under general maritime law. Sea-Land Services v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). The Court defined 'society' as 'a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection.' 414 U.S. at 585, 94 S.Ct. at 815. Our Court has recently held that 'loss of consortium is a compensable harm' under Gaudet, Skidmore v. Grueninger, 506 F.2d 716, at 728 (5th Cir. 1975), but that 'for purposes of precluding double recovery we note that a recovery for loss of consortium includes loss of society.' Id. at 729. Two R. contends that while Gaudet does in fact allow recovery of nonpecuniary losses, it does so only for the death of a longshoreman where unseaworthiness is urged against the vessel owner and that such a recovery is not allowed under the Jones Act, citing Canal Barge Co. v. Griffith, 480 F.2d 11 (5th Cir. 1973). However, Canal Barge is no longer valid precedent on this issue. See Kaiser v. Travelers Insurance Co., 487 F.2d 1300 (5th Cir. 1974) reh. granted, 496 F.2d 531 (5th Cir. 1974). Furthermore, while the question of the proper measure of damages when the recovery is solely under the Jones Act has not been decided by this Circuit, where, as here, there is liability under both a Jones Act claim and a general maritime claim for unseaworthiness, this Court has recognized Gaudet damages as proper. See McDonald v. Federal Barge Lines, Inc., 496 F.2d 1376 (5th Cir. 1974).
 
 
 15
 Under the Gaudet rule, the plaintiff was entitled to recover not only loss of support and services, but also loss of society. Because the trial court refused to allow evidence on loss of society and instructed the jury not to consider such loss in reaching its verdict, the judgment of damages must be vacated and remanded to the trial court for further proceedings not inconsistent with this opinion.[4] The judgment of liability is affirmed.
 
 GEE, Circuit Judge (concurring):
 
 16
 Believing our opinion to be as mandated by the Supreme Court's precedents on sufficiency of evidence in FELA and Jones Act matters[1] and in all other respects correct, I concur. However we may view these holdings,[2] we must apply them.
 
 
 
 [1]
 Firoinal No. 3 consists, in essence, of one-half grain of Codeine, one-fourth grain of Barbital (a barbiturate), and aspirin. Landry was instructed to take one pill every four hours 'for pain.'
 
 
 [2]
 The defendant maintains now, as it did unsuccessfully at the close of the plaintiff's case and at the end of trial, that the suit should be dismissed because Mrs. Landry did not prove that she was the personal representative of herself and the children. This argument is without merit. Rule 9(a), Fed.R.Civ.P., provides that a party desiring 'to raise an issue as to * * * the authority of a party to sue or be sued in a representative capacity * * * shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.' The defendants made only a general denial of Mrs. Landry's authority and alleged no supporting particulars. This is insufficient to join issue on Mrs. Landry's authority to sue, Young v. Pattridge, 40 F.R.D. 376 (N.D.Miss.1966); Wright & Miller, 5 Fed.Prac. and Proc.: Civil § 1294, p. 393. As a result, the defendant's objection to Mrs. Landry's authority is construed to have been waived. Coleman v. Coleman, 75 F.Supp. 107 (D.S.C.1947). See Wright & Miller, supra, at § 1295
 The defendant cannot say that its rights are prejudiced by the application of the waiver doctrine in this case. It implies that because Mrs. Landry did not prove that she was her husband's testamentary executor, her claim is technically defeated. This argument misconstrues the meaning of 'personal representative' in such actions, however. These claims are brought for the benefit not of the decedent's estate, Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686 (1930), but for the benefit under general maritime law of the decedent's dependents, Sea-Land Services v. Gaudet, supra, or under the Jones Act for the benefit 'of the surviving widow and children of the employee, if any, to the exclusion of his parents or other beneficiaries.' Hassan v. A. M. Landry & Son, Inc., 321 F.2d 570, 571 (5th Cir. 1963), cert. den. 375 U.S. 967, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964). See generally Chicago B. & Q.R. Co. v. Wells-Dickey Trust Co., Administrator, 275 U.S. 161, 163, 48 S.Ct. 73, 72 L.Ed. 216 (1927). Mrs. Landry offered undisputed evidence at trial that she was Landry's widow, that her children were the children of Landry, and that there were no other dependents. Thus her authority as 'personal representative' was fully established and was in no way defective. See Waldrip v. Liberty Mut. Ins. Co., 11 F.R.D. 426 (W.D.La.1951).
 
 
 [3]
 The defendant also alleges error, without citing any authority, in the trial court's refusal to propound a specific interrogatory to the jury on the question of the specific act of negligence or the specific state of unseaworthiness that led to Landry's death. We cannot say, and the defendant has made no argument to lead us to believe, that this refusal was an abuse of the sound discretion of the trial court. Loffland Bros. Co. v. Roberts, 386 F.2d 540 (5th Cir. 1967), cert. den., 389 U.S. 1040, 88 S.Ct. 778, 19 L.Ed.2d 830 (1968)
 Nor are we able to agree with the defendant that the trial court erred in instructing the jury that it could use two separate Coast Guard safety regulations as standards for determining the adequacy of the vessel's handrailings. The trial court discussed its proposed charge with both counsel and there was no objection to the charge on the regulations. Consequently, the defendant is barred from raising this objection now. Rule 51, Fed.R.Civ.P.; Curd v. Todd-Johnson Dry Docks, Inc., 213 F.2d 864 (5th Cir. 1954).
 
 
 [4]
 Inasmuch as this litigation has already carried on for over three years, through two trials and one appeal, we remand to the trial court with the direction to grant the plaintiff a new trial on the issue of damages, if she so elects. If the plaintiff does not elect to have a new trial on the issue of damages, then the judgment of $147,500 oto Mrs. Landry and the remittitur of $100,000 to each child must stand. The trial court properly allowed the plaintiff to accept the remittitur or have a new trial, and we cannot say that the remission of the children's award brought the awards below the maximum supportable by the evidence nor that the decision itself to order remission was a 'grave abuse of discretion.' Bonura v. Sea-Land Service, Inc., 505 F.2d 665, at 669, 669--670 (5th Cir. 1974)
 If the plaintiff does elect a new trial on the issue of damages, the trial court is directed to reduce the resulting award to Mrs. Landry and her children by 20% due to Landry's contributory negligence. (We note that the trial court applied the 20% factor in remitting the children's awards). The jury found that Landry contributed to his own drowing, apparently by continuing to wash the shale shaker after he had been told to render only light duties, and reduced the damage award by 20%. Although contributory negligence is often referred to in these cases as a factor 'in mitigation of damages,' e.g., Pope & Talbot v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 98 L.Ed. 143 (1953), it is conceptually a factor in assessing the relative liabilities of the parties. It is a 'contributing cause of the (seaman's) injury, without which the (defendant) would be liable to the full extent of the damage.' Socony-Vacuum Co. v. Smith, 305 U.S. 424, 432, 59 S.Ct. 262, 267, 83 L.Ed. 265 (1939). Because contributory negligence is a factor for determining the comparative liability between the parties, whether under the Jones Act or general maritime law, Pope & Talbot v. Hawn, supra, and because we see no reason to disturb the jury's finding on liability, II supra, any award in a new trial solely on the issue of damages must be reduced by 20% by the Court.
 
 
 [1]
 See Gibson v. Elgin, J & E Ry., 246 F.2d 834, 837 (7th Cir.), cert. denied, 355 U.S. 897, 78 S.Ct. 270, 2 L.Ed.2d 193 (1957) ('Under the recent decisions of the United States Supreme Court in F.E.L.A. cases, speculation, conjecture and possibilities suffice to support a jury verdict.')
 
 
 [2]
 9 Wright & Miller, Federal Practice and Procedure: Civil 554--5, note 80