**Warnie Lee IVY et al., Plaintiffs-Appellees, Cross-Appellants,**

**v.**

**SECURITY BARGE LINES, INC., Defendant-Appellant, Cross-Appellee.**

**No. 76–4130.**

United States Court of Appeals, Fifth Circuit.

Dec. 4, 1978.

---

Philip Mansour, Martin A. Kilpatrick, Greenville, Miss., for defendant-appellant, cross-appellee.

Joshua A. Tilton, Marvin L. Jeffers, Baton Route, La., for plaintiffs-appellees, cross-appellants.

Before COLEMAN, CLARK and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In this case we explore for the first time since the Supreme Court's decision in *Mobil Oil Corp. v. Higginbotham*, 1978, 436 U.S.

618, 98 S.Ct. 2010, 56 L.Ed.2d 581, the question whether damages for nonpecuniary losses may be recovered in a Jones Act suit for the death of a decedent on the territorial waters of the United States. We find ourselves compelled both by the facts of *Higginbotham* and the policy underlying it to conclude that damages for loss of society may not be allowed. Defendant Security Barge Lines has also raised several other alleged errors. We conclude that the cumulative effect of these irregularities requires us to reverse and remand for a new trial.

## I. Facts

John Ivy, the decedent, was a member of the crew of the vessel M/V ISSAQUENA until he was lost and presumably drowned on the night of August 11, 1975 as he was attempting to aid a fellow crewman who had fallen overboard. The vessel and its tow were then heading up the Mississippi River a few miles above Baton Rouge, Louisiana.

Decedent's father, Warnie Lee Ivy, instituted this suit under the Jones Act for negligence and the general maritime law for unseaworthiness. Although plaintiff professed to be the personal representative of decedent, his appointment as administrator of John Ivy's estate was revoked before the case came to trial.

In answer to special interrogatories, the jury found that John Ivy died as a result of the negligence of defendant, but was 50% contributorily negligent himself, and awarded each of his parents $50,000 for loss of support, services, and society. The trial judge refused to instruct the jury to discount any award made to present value. The award was reduced by 50% to reflect the contributory negligence of the decedent,

and a judgment was entered. Both parties appealed.[1]

## II. Procedural Capacity to Sue

■ The Jones Act, 46 U.S.C. § 688, provides in part: "[I]n case of the death of any seaman as a result of any [personal injury in the course of his employment] *the personal representative of such seaman* may maintain an action for damages at law . . . ." (emphasis added). The requirement that the cause of action be asserted only by the personal representative of the decedent and not by the beneficiaries of the claim has been extended by analogy to suits brought under general maritime law since *Moragne v. States Marine Lines, Inc.,* 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339. *See, e. g., Savoie v. Nolty J. Theriot, Inc.,* E.D.La.1972, 396 F.Supp. 973; *Futch v. Midland Enterprises, Inc.,* M.D.La.1972, 344 F.Supp. 324, *aff'd,* 5 Cir. 1973, 471 F.2d 1195. In the few cases in which courts have allowed wrongful death suits to be maintained by the beneficiaries of the decedent rather than his personal representative the result can be explained either by the failure of the defendant to object in a timely fashion as required by Rule 9(a), Federal Rules of Civil Procedure,[2] *see, e. g., Landry v. Two R. Drilling Co.,* 5 Cir. 1975, 511 F.2d 138; *Summers v. Interstate Tractor & Equipment Co.,* 9 Cir. 1972, 466 F.2d 42; *Marston v. American Employers Insurance Co.,* 1 Cir. 1971, 439 F.2d 1035; *Young v. Pattridge,* N.D.Miss.1966, 40 F.R.D. 376, or by the existence of a possible conflict of interest among the beneficiaries requiring multiple representation, *see, e. g., Smith v. Clark Sherwood Oil Field Contractors,* 5 Cir. 1972, 457 F.2d 1339, *cert. denied,* 1972, 409 U.S. 980, 93 S.Ct. 308, 34 L.Ed.2d 243; *Civil v. Waterman Steamship Corp.,* 2 Cir. 1954, 217 F.2d 94.

1. Plaintiff challenges the jury's finding that the decedent was 50% negligent, and that the vessel was seaworthy. We find both findings supported by the weight of the evidence, and plaintiff's motion for judgment n. o. v. or for a new trial was therefore properly denied. *See Hampton v. Magnolia Towing Co.,* 5 Cir. 1964, 338 F.2d 303.

2. Rule 9(a), F.R.C.P. requires:

When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.

The Supreme Court has likewise interpreted similar language in the Federal Employers' Liability Act, 45 U.S.C. § 51. In *American Railroad Co. of Porto Rico v. Birch*, 1912, 224 U.S. 547, 32 S.Ct. 603, 56 L.Ed. 879, the widow and son of a deceased railroad worker brought an action as sole beneficiaries, and the lower court held that they should not be compelled to have an administrator appointed for purposes of the suit. The Supreme Court reversed, although a full jury trial had been held:

> But the words of the act will not yield to such a liberal construction. They are too clear to be other than strictly followed. They give an action for damages to the person injured, or, "in case of his death, . . . to his or her personal representative." . . . [T]his distinction between the parties to sue and the parties to be benefited by the suit makes clear the purposes of Congress. To this purpose we must yield. Even if we could say, as we cannot, that it is not a better provision than to give the cause of action to those in relation to the deceased. In the present case it looks like a useless circumlocution to require an administration upon the deceased's estate, but in many cases it might be much the simpler plan and keep the controversy free from elements but those which relate to the cause of action. But we may presume that all contending considerations were taken into account and the purpose of Congress expressed in the language it used. [224 U.S. at 557, 32 S.Ct. at 606, 56 L.Ed. at 882.]

*See also St. Louis, San Francisco & Texas Ry. v. Seale*, 1913, 229 U.S. 156, 33 S.Ct. 651, 57 L.Ed. 1129; *Troxell v. Delaware, Lackawanna & Western R.R.*, 1913, 227 U.S. 434, 33 S.Ct. 274, 57 L.Ed. 586; *Missouri, Kansas & Texas Ry. v. Wulf*, 1913, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355.

The trial judge, therefore, erred in deciding that the plaintiff had procedural capacity to bring this action. Whether Rule 61, Federal Rules of Civil Procedure, modifies the result in *American Railroad Co., supra*, so that, in the absence of prejudice to the employer, a new trial would not result from this error alone, we need not now determine. *See United States ex rel. Harvey Gulf Int'l Marine, Inc. v. Maryland Cas. Co.*, 5 Cir. 1978, 573 F.2d 245, and opinion of Judge Rubin, concurring in part and dissenting in part.[3] Because we are remanding for a new trial on the basis of the other errors in the original proceedings, the complaint may there be amended so that the claim is asserted by the proper party; if this is not promptly done, the trial court should dismiss the action.[4]

## III. Award for Loss of Society

The court refused to eliminate from the damage award the sum allowed as compensation for the parents' loss of society resulting from their son's death. This alleged error requires a detailed analysis of the statutory and judicially-developed damage remedies for maritime deaths, guided by the newly lit *Higginbotham* beacon.

---

**3.** Counsel for Security Barge Lines conceded during oral argument that defendant had in no way been harmed by plaintiff's lack of procedural capacity.

**4.** Plaintiff's counsel claimed below that his client could not secure letters of administration because of his inability to prove that John Ivy is dead. However, Mississippi law explicitly provides for appointment of a guardian in cases like this. Under Miss.Code Ann. § 93–13–161(1):

> Whenever a person, hereinafter referred to as an absentee, who . . . while serving as a merchant seaman, has been officially reported or listed as missing . . . has an interest in any property in this state or is a legal resident of this state and has not appointed an attorney-in-fact with authority to act in his behalf in regard to his property or interest, then the chancery court, or the chancellor in vacation, of the county of such absentee's legal residence, or of the county where the absentee's property is situated, upon petition alleging the foregoing facts and showing the necessity for providing care of the property of such absentee made by any person authorized under law to act as guardian, giving preference to next of kin as now provided by law, and upon good cause being shown, may appoint a guardian to take charge of the absentee's estate.

The Death on the High Seas Act (DOH-SA), 46 U.S.C. § 761, provides for recovery by the personal representative of a person whose death resulted from a wrongful act, neglect, or default occurring on the high seas. 46 U.S.C. § 762 specifically limits damages in such a suit to "a fair and just compensation *for the pecuniary loss* sustained by the persons for whose benefit the suit is brought . . ." (emphasis added).

The Jones Act has no such specific limitation on damages, but does incorporate by reference the statute governing the death of railway workers, the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* The liability provision of that statute, 45 U.S.C. § 51, also contains no explicit limitation of damages to pecuniary losses, but was early interpreted thus to confine the award. *See, e. g., Michigan Central R.R. v. Vreeland,* 1913, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417; *American Railroad Co. of Porto Rico v. Didricksen,* 1913, 227 U.S. 145, 33 S.Ct. 224, 57 L.Ed. 456. Because of the incorporation of FELA into the Jones Act, courts have uniformly interpreted Jones Act damage recoveries as similarly limited to pecuniary losses. *See, e. g., In re M/V Elaine Jones,* 5 Cir. 1973, 480 F.2d 11, *reh. granted,* 1973, 513 F.2d 911, *cert. denied,* 1975, 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60; *Cities Service Oil Co. v. Launey,* 5 Cir. 1968, 403 F.2d 537; *Igneri v. Cie. de Transports Oceaniques,* 2 Cir. 1963, 323 F.2d 257, *cert. denied,* 1964, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969; *United States v. Boykin,* 5 Cir. 1931, 49 F.2d 762.

The present question about continuing along the course thus charted comes as a result of another line of cases, beginning with *Moragne v. States Marine Lines, Inc.,* 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339. The Supreme Court there recognized for the first time a cause of action for wrongful death based on general maritime law. Before then death arising from unseaworthiness could be the basis of a suit under DOHSA, which is limited to events occurring outside the territorial waters of the United States; if the accident occurred within territorial waters, the plaintiff was forced to resort to state wrongful death statutes. These statutes were often unwieldy and not designed to accommodate maritime claims; moreover, because they varied from state to state, the representatives of similarly situated deceased seamen might be awarded widely varying sums based on the fortuity of whether the accident occurred within or without the three-mile limit and, if it were within that limit, based on the laws of the particular state where the casualty occurred. One of *Moragne*'s objectives was to substitute a uniform rule for these unpredictable eddies. The Court left open the issue of appropriate damages under this new cause of action, noting "If still other subsidiary issues should require resolution, such as particular questions of the measure of damages, the courts will not be without persuasive analogy for guidance. Both the Death on the High Seas Act and the numerous state wrongful-death acts have been implemented with success for decades." 398 U.S. at 408, 90 S.Ct. at 1792, 26 L.Ed.2d at 361.

In the wake of *Moragne,* some lower courts concluded that the uniformity with which the Supreme Court had been concerned in that case involved uniform bases of liability rather than standard damage recoveries, and held that nonpecuniary damages could be awarded by utilizing state remedies to supplement the new *Moragne* cause of action. *See, e. g., Dennis v. Central Gulf Steamship Corp.,* 5 Cir. 1972, 453 F.2d 137, *cert. denied,* 1972, 409 U.S. 948, 93 S.Ct. 286, 34 L.Ed.2d 218; *Greene v. Vantage Steamship Corp.,* 4 Cir. 1972, 466 F.2d 159. Others concluded that the policy of uniformity embodied in *Moragne* required that DOHSA's limitation to pecuniary damages be extended to claims under general maritime law. *See, e. g., Simpson v. Knutsen,* 9 Cir. 1971, 444 F.2d 523; *In re U.S. Steel Corp.,* 6 Cir. 1970, 436 F.2d 1256, *cert. denied,* 1971, 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153.

The Supreme Court added another beacon to guide lower courts through the unmapped seas in *Sea-Land Services, Inc. v. Gaudet,* 1974, 414 U.S. 573, 94 S.Ct. 806, 39

L.Ed.2d 9. There the decedent had recovered for injuries suffered on state waters, but later died as a result of the same event; his widow sued under *Moragne.* Although the Court refused to allow double recovery, it did permit the widow to receive compensation for pecuniary damages, including loss of support, and services, as well as funeral expenses. The Court then turned to the nonpecuniary claim for loss of society, and noted that recovery for this intangible deprivation was available under the majority of state wrongful death statutes, replaced by *Moragne.* It continued:

> We recognize, of course, that our decision permits recovery of damages not generally available under the Death on the High Seas Act. Traditionally, however, "Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law," . . . The scope and content of the general maritime remedy for wrongful death established in *Moragne* is no exception. After combing the legislative history of the Death on the High Seas Act, we concluded in *Moragne* that Congress expressed "no intention . . . of foreclosing any nonstatutory federal remedies that might be found appropriate to effectuate the policies of general maritime law." . . . Nothing in the legislative history of the Act suggests that Congress intended the Act's statutory measure of damages to pre-empt any additional elements of damage for a maritime wrongful-death remedy which this Court might deem "appropriate to effectuate the policies of general maritime law." To the contrary, Congress' insistence that

the Act not extend to territorial waters . . . indicates that Congress was not concerned that there be a uniform measure of damages . . . . [414 U.S. at 588 n.22, 94 S.Ct. at 816, 39 L.Ed.2d at 23.]

Read broadly, *Gaudet* would have eliminated the restriction of damages to pecuniary losses, at least so far as a claim for loss of society is concerned, whenever a cause of action could be maintained under general maritime law, whether or not there was also a claim maintainable under DOHSA or the Jones Act. Taking that reading of the wind, the Fifth Circuit sailed with it following *Gaudet. See Law v. Sea Drilling Corp.,* 5 Cir. 1975, 523 F.2d 793;[5] *Landry v. Two R. Drilling Co.,* 5 Cir. 1975, 511 F.2d 138.[6]

The lower court's decision in this case was the first reported after *Gaudet* that confronted the issue of the propriety of awarding nonpecuniary damages when a recovery is premised solely on the Jones Act. *Ivy v. Security Barge Lines, Inc.,* N.D.Miss.1976, 424 F.Supp. 1154. The court concluded that *Moragne*'s special solicitude for men challenging the seas, combined with *Gaudet*'s extension of this concern to seamen's dependents, required "that in cases where the only basis of recovery is the negligence of the ship or its owner, such as the case here, dependents of a wrongful-death victim are not limited to a recovery for pecuniary loss, but may recover also for loss of services, and society." *Id.* at 1156.

Since this appeal was filed, however, the Supreme Court has explained that *Gaudet* is to be read in straitened fashion, and does not negate the statutory limitations on

---

5. In *Law* Chief Judge Brown saw the disparity in damage recoveries under the various causes of action as precisely the sort of disuniformity that *Moragne* was designed to eliminate, and declared, "It is time that the dead hand of *The Harrisburg*—whether in the courts or on the elbow of the congressional draftsmen of DOHSA—follow the rest of the hulk to an honorable rest in the briny deep. . . . No longer does one need . . . DOHSA as a remedy. There is a federal maritime cause of action for death on navigable waters—any navigable waters—and it can be enforced in any court." 523 F.2d at 798.

6. Claims were made in *Landry* both on the basis of general maritime law and under the Jones Act. The defendant had urged that nonpecuniary damages were not recoverable. The court held, however, that a finding of liability would support the award for loss of society, noting, "[W]hile the question of the proper measure of damages when the recovery is solely under the Jones Act has not been decided by this Circuit, where, as here, there is liability under both a Jones Act claim and a general maritime claim for unseaworthiness, this Court has recognized *Gaudet* damages are proper." 511 F.2d at 143.

damages in DOHSA, or the judicially developed restrictions on damages under the Jones Act, at least when the death occurs beyond the territorial limits of United States waters. In *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581, suit was brought by several claimants seeking recovery for the death of their husbands in a helicopter crash outside United States waters. One of the passengers, Shinn, was found by the district court to be a Jones Act seaman and his widow was allowed to sue under the Jones Act, DOHSA, and general maritime law. Representatives of two other passengers sued under DOHSA and general maritime law.[7] All secured a damage award premised on Mobil's negligence, including an amount for loss of society.

The Supreme Court held that the case was distinguishable from *Gaudet* because of the place of the death, and refused to allow the award for loss of society to stand. Noting that Congress had specifically limited damages under DOHSA to pecuniary loss, the Court found the goal of uniformity insufficiently compelling to negate clear legislative intent; "Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements." 98 S.Ct. at 2015, 56 L.Ed.2d at 587. The Court also noted, "It is true that the measure of damages in coastal waters will differ from that on the high seas, but even if this difference proves significant, a desire for uniformity cannot override the statute," *id.*, but expressed the belief that the difference between a damage award including loss of society and one without it could be "primarily symbolic" and that the disuniformity created by the opinion may not have "a great practical significance." 436 U.S. at 624, 98 S.Ct. at 2015 n.20, 56 L.Ed. at 587.

■ By deciding that pecuniary damages could not be recovered by any of the plaintiffs, including the representative of Shinn, the Supreme Court decided sub silentio that a Jones Act seaman's beneficiaries can not recover nonpecuniary damages for a death occurring on the high seas. Were nonpecuniary damages available under the Jones Act, although not under DOHSA, the Supreme Court would have affirmed as to Shinn while reversing as to the other plaintiffs. We are bound by its failure to do so.

■ Our sole remaining task, therefore, is to consider whether this limitation on Jones Act recoveries extends to deaths occurring within the territorial limits of the United States. In failing to differentiate between the Jones Act plaintiff and those seeking recovery only under DOHSA and general maritime law, the Court has indicated that, as a policy matter, it will not distinguish between the statutorily imposed limitation on damages in DOHSA and the judicially created restriction on damages under the Jones Act. To allow the recovery of nonpecuniary damages under the Jones Act merely because the accident occurred within territorial waters would not only be inconsistent with this policy and negate years of firmly established legal precedent, but would create two separate Jones Act remedies, each applicable only within its own geographical sphere. It would be anomalous indeed if we interpreted the Supreme Court's opinion to encourage the creation of needless disuniformity based solely on the place of the accident, bringing the law full circle from the days prior to *Moragne*. We have no authority to change the course thus set for us, no matter what star we would have chosen to steer by were we plotting the voyage.[8] The award of nonpe-

7. On appeal, one of these two passengers was also found to be a Jones Act seaman, and his widow's claims were remanded to the district court for a determination of damages under the Jones Act. 545 F.2d at 433.

8. We are not unaware of the implications of this result, mandated though it is by *Higginbotham*. If an explosion occurred aboard a vessel in the Port of New Orleans, caused by both

negligence and unseaworthiness, resulting in the death of a passenger, a longshoreman employed by a third party stevedore, and a Jones Act seaman, the recovery by the representative of each would be based on a different standard and be for a different amount: (a) The passenger's representative would have an action under *Moragne-Gaudet* including damages for loss of services; query: could they join a wrongful death action under Louisiana law, in-

cuniary damages under the Jones Act here was improper and cannot stand.

## IV. Failure to Instruct the Jury to Discount Award to Present Value

Counsel submitted requests for special charges respecting damages. After the trial judge had instructed the jury in substantial accordance with counsel's requests, he afforded counsel, as required by Rule 51, Federal Rules of Civil Procedure, an opportunity to object. Then, for the first time, defendant's lawyer asked for a charge that any sum allowed for loss of future services and support must be discounted. The trial judge expressed willingness to give the instruction to the jury if the attorney would give him the substance of the request. The lawyer asked for a recess to return to his office to prepare such a charge. The judge refused to permit a delay in the trial and declined to prepare the instruction himself—to "shoot from the hip" as he put it—and overruled the objection. This conduct is charged as error.

■ There can be no doubt that an allowance for future damage must take into account the earning power of the money awarded over the term for which it compensates the plaintiff. *Chesapeake & Ohio Ry. Co. v. Kelly*, 1916, 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117, 1122; *In re United States Steel Corp.*, 6 Cir. 1970, 436 F.2d 1256, 1280; *Sleeman v. Chesapeake & Ohio Ry. Co.*, 6 Cir. 1969, 414 F.2d 305, 307; *Yodice v. Koninklijke Nederlandsche Stomboot Maatschappij*, 2 Cir. 1971, 443 F.2d 76, 79, aff'd after remand, 1972, 471 F.2d 705, cert. denied, 1973, 411 U.S. 933, 93 S.Ct. 1902, 36 L.Ed.2d 393. It would thus have been incumbent on the lower court to instruct the jury to discount the award to present value had such instruction been timely requested. *Ball v. Delta Marine Drilling Co.*, 5 Cir. 1973, 476 F.2d 287.

Trial judges, however, are not black-robed computers, equipped to spew forth jury charges on every point of law at the prodding of counsel's magical words. Rule 51 contemplates that requests for special charges shall be submitted in writing "[a]t the close of the evidence or at such earlier time during the trial as the court reasonably directs. . . ." This permits the court to consider the exact charge counsel desires and also gives opposing counsel time to object.

■ While the trial court does have a duty to honor counsel's requests for special charges timely made, even in instances where only the substance of the issue is made known,[9] there is an obligation on lawyers, too, who know far better than the court the issues in the case and its hidden

---

voking Civil Code Art. 2315 and also recover for survivor's grief? (b) The longshoremen's representative would have a 905(b) action based on land-type negligence standards. 33 U.S.C. § 905(b). *See Hess v. Upper Mississippi Towing Corp.*, 5 Cir. 1977, 559 F.2d 1030, cert. denied, 1978, 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518. The 905(b) claim is exclusive, but the statute does not state the measure of damages. Because the negligence is land-type, would the measure of damages likewise be land-analogized and include grief, as allowed under Civil Code Article 2315? Or does *Higginbotham* limit their recovery to pecuniary loss? (c) Finally, the Jones Act seaman's survivors receive only reimbursement for pecuniary losses. They, presumably, could not join the state death claim with their Jones Act claim. *Lindgren v. United States*, 1930, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686; *Gillespie v. United States Steel Corp.*, 1964, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199; *Schlichter v. Port Arthur Towing Co.*, 5 Cir. 1961, 288 F.2d 801, 806, cert.

denied, 1961, 368 U.S. 828, 82 S.Ct. 50, 7 L.Ed.2d 32.

If the passenger's representative could cumulate a state death action with the maritime-type action, or the longshoremen's administrator could recover land-measured damages, then we would be back to the situation criticized in *Moragne* in that the recovery measure would be different if the explosion occurred in Florida waters. *See* 398 U.S. at 401–02, 90 S.Ct. at 1788, 26 L.Ed.2d at 357.

If the deaths of these persons, each having the same status as one of the three in the first hypothesis, were caused by unseaworthiness and negligence on the high seas, then similar questions would arise and like contradictions might ensue.

9. *See, e. g., Sharp v. Root*, 5 Cir. 1957, 240 F.2d 519, 522 & n.3; *Dunn v. United States*, 5 Cir. 1963, 318 F.2d 89, 93 (requests under Rule 30, F.R.Cr.P.).

complexities, to plan ahead, to give the judge at least some opportunity to reflect on requests and to accord to opposing counsel an opportunity to respond.

■ In this case it was evident long before the trial began that the plaintiff was requesting substantial damages for future losses. Instead of anticipating the necessity for jury guidance on the question, defense counsel waited until the charge had been completed and the jury was standing by, ready to begin deliberation. Where, as here, a charge was requested orally only after the jury had been instructed, and even then only the subject not the content of the charge was suggested, it was not error for the trial judge to refuse to deliver it. *See, e. g., Pinto v. States Marine Corp.*, 2 Cir. 1961, 296 F.2d 1, 4 n.3, *cert. denied*, 1962, 369 U.S. 843, 82 S.Ct. 874, 7 L.Ed.2d 847; *Wilson v. Southern Farm Bureau Casualty Co.*, 5 Cir. 1960, 275 F.2d 819, 822, *cert. denied*, 1960, 364 U.S. 817, 81 S.Ct. 49, 5 L.Ed.2d 48; *Turner Construction Co. v. Houlihan*, 1 Cir. 1957, 240 F.2d 435, 439–40; *Seeraty v. Philadelphia Coca-Cola Bottling Co.*, 3 Cir. 1952, 198 F.2d 264, 265; *Churchfield v. Paul Snyder, Inc.*, M.D.Pa.1952, 102 F.Supp. 441, 443–44; *Paul v. Duluth, Missabe & Iron Range Ry.*, D.Minn.1950, 96 F.Supp. 578. See *generally* Blackmar, Problems of Court and Counsel in Requests and Exceptions: How to Avoid Them, 62 F.R.D. 251 (1974).

Now that the issue has been raised, however, on retrial an appropriate instruction on discounting any damage award for future losses to present value should be given; counsel should prepare a draft of the instruction he suggests in accordance with Rule 51.

### V. Insufficiency of Evidence to Support Award for Loss of Services and Support

■ Defendant also challenges the sufficiency of the evidence to support an award for loss of support and services and, in any case, alleges that the award was excessive. While our decision to remand for a new trial obviates the need to rule on the excessiveness of the award, we review the evidence on lost services and support to determine whether it was sufficient to sustain an award in order to provide guidance for the new trial.

The record contains testimony that John Ivy paid certain utility bills, phone bills, and otherwise contributed to household expenses. He also bought gifts for and gave spending money to his younger brother. However, he paid nothing for his room and board. His services did not go beyond yard work and occasional babysitting. No documentary evidence was introduced establishing the amount of his financial contributions to the family, nor were his services around the house in any way valued. Under the circumstances, we conclude that the evidence of support and services was insufficient to show that the Ivys suffered any monetary loss for support and services by their son's death; the net value of his contribution to the household was offset by the room and board furnished him. The trial judge erred in submitting this issue to the jury. Our conclusion on this issue is, however, without prejudice to the right of the plaintiff to adduce further evidence on remand if such evidence is available to support an award.

### VI. Instructions on Negligence

■ The trial court's instructions on negligence are also assigned as error by defendant. The court instructed the jury:

In considering whether or not an operation was negligent, it is not necessary that the Plaintiff prove that there was a better or safer method than the method used. All the Plaintiff need to show in order to prove the existence of a negligent operation is to show that the operation was not reasonably safe under the circumstances.

The court continued sometime later:

Negligence under the Jones Act may consist of a failure to comply with a duty required by law. Employers of seamen have a legal duty to provide their employees with a safe place in which to work.

These instructions demonstrate a certain amount of confusion between the absolute duty imposed upon the owner to maintain a seaworthy vessel and the qualified duty imposed by the negligence standard. The owner of a vessel has an unqualified duty to furnish a vessel and appurtenances reasonably safe and fit for their intended use. *See, e. g., Gutierrez v. Waterman Steamship Corp.*, 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297; *Marshall v. Ove Skou Rederi A/S*, 5 Cir. 1967, 378 F.2d 193, *cert. denied*, 1967, 389 U.S. 828, 88 S.Ct. 86, 19 L.Ed.2d 84; *Vickers v. Tumey*, 5 Cir. 1961, 290 F.2d 426. However, the owner is negligent only if he fails to use *reasonable care* to maintain a reasonably safe place to work. *Cox v. Esso Shipping Co.*, 5 Cir. 1957, 247 F.2d 629, 637, adopted by the Supreme Court in *Michalic v. Cleveland Tankers, Inc.*, 1960, 364 U.S. 325, 328, 81 S.Ct. 6, 9–10, 5 L.Ed.2d 20, 23–4. *See also The M/V "Tungus" v. Skovgaard*, 1959, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524.

At the conclusion of the new trial on remand, appropriate instructions should of course, be given, with special attention to the distinction between the unseaworthiness and negligence standards.

## VII. Improper Closing Argument to Jury

Defendant lastly contends that plaintiff's counsel made an improper closing argument to the jury, including blatant appeals to sympathy. The relevant section of the argument is set out in full in footnote.[10] We need only note that counsel clearly argued the Golden Rule, that the jurors should put themselves in the shoes of the plaintiff and do unto him as they would have him do unto them under similar circumstances. Such an argument is universally recognized as improper[11] because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. Counsel's remarks at the conclusion of the new trial on remand must be confined to appropriate argument.

**REVERSED AND REMANDED FOR A NEW TRIAL.**

**10.** "Now, it is a happy situation that we are not often faced with having to determine or go to court because of the loss of a son. This, fortunately, does not happen very often. And in our system of justice the only way that we have of compensating anyone for a wrong that was done to them, and there is just no question of the wrong in this case, the only way we have to compensate them is with money. That is not adequate, but it is the only thing they have, and it is the only thing available. If my son were killed, I don't know, I don't know what the compensation would be. I think probably I would have to go to Mandeville, or some place to the mental institution. But, at any rate, Johnny Ivy was lost and his parents are entitled to recover for his death. Just as you would be entitled if your sons were wrongfully killed, and I would be entitled if my son were killed. But to put a dollar value on a son's life, you know—. . . What is grief worth? Grief. What is the permanent lack of a smile? . . . This loss has got to be adequately compensated. And I can only suggest to you that when you determine the amount of damages to be awarded to Mr. and Mrs. Ivy that you place yourselves in their position, that you put yourself in their shoes. And I can only suggest to you that an award of less than $100,000 per parent would not be adequate. There is just no way to adequately compensate them, but that is the best way we have."

**11.** *See, e. g., Chicago & N.W. Ry. v. Kelly*, 8 Cir. 1936, 84 F.2d 569, 576; *F. W. Woolworth Co. v. Wilson*, 5 Cir. 1934, 74 F.2d 439, 442–43; *Klein v. Herring*, Fla.Dist.Ct.App.1977, 347 So.2d 681, 682; *Delaware Olds, Inc. v. Dixon*, Del.1976, 367 A.2d 178, 179; *Colgan v. Raymond*, 1966, 275 Minn. 219, 146 N.W.2d 530, 535; *Miku v. Olmen*, Fla.Dist.Ct.App.1966, 193 So.2d 17, 18, *cert. denied*, Fla.1967, 201 So.2d 232; *Copiah Dairies, Inc. v. Addkison*, 1963, 247 Miss. 327, 153 So.2d 689, 694; *Roth v. Jelden*, 1962, 80 S.D. 40, 118 N.W.2d 20, 25; *Phillips v. Fulghum*, 1962, 203 Va. 543, 125 S.E.2d 835, 839; *Brant v. Wabash R.R.,* 1961, 31 Ill.App.2d 337, 176 N.E.2d 13, 14, *rev'd on other grounds*, 1962, 24 Ill.2d 541, 182 N.E.2d 181; *Jackson v. Southwestern Pub. Serv. Co.*, 1960, 66 N.M. 458, 349 P.2d 1029, 1040; *Faught v. Washam*, Mo.1959, 329 S.W.2d 588, 602; *Red Top Cab Co. v. Capps*, Tex.Civ.App.1954, 270 S.W.2d 273, 275 n.2.