**STATE**

v.

**Regis JETTE.**

**No. 88–539–C.A.**

Supreme Court of Rhode Island.

Feb. 6, 1990.

James E. O'Neil, Atty. Gen., Annie Goldberg, Sp. Asst. Atty. Gen., for plaintiff.

Joseph A. Keough, Keough, Parker, Gearon & Viner, Pawtucket, for defendant.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

## OPINION

SHEA, Justice.

This case comes before us on appeal by the defendant from judgments of conviction entered after a jury trial in the Superior Court. We affirm.

The defendant, Regis Jette, was indicted on five charges of sexual assault.[1] The jury returned guilty verdicts on one count of first degree sexual assault and two counts of second degree sexual assault. The defendant was acquitted on two counts of first degree sexual assault by the same jury verdict. Judy T.,[2] the complaining witness (hereafter victim or Judy), testified to the following facts at trial.

On the night of March 2, 1986, Judy and a friend went to a local bar, the Golden Elks Lounge. Shortly after Judy arrived, defendant entered the lounge. Judy testified that she had known defendant for approximately three years at that time and that they had met through a mutual friend. The defendant, Judy and her friend stayed at the Golden Elks Lounge for approximately one hour and then left to go to Lou's Cafe, another local establishment, to shoot pool. The victim and defendant rode together in her car, and the victim's friend met them there in her own vehicle.

At Lou's Cafe Judy met a person who introduced himself as "Jim." At approximately 11 p.m., she and "Jim" left the cafe and went to pick up the victim's dog at a nearby farm. When the two later returned to Lou's Cafe, Judy testified, defendant was not at the cafe. She stated that she and her friend left the cafe around 12:15 a.m., each in her own vehicle.

Judy testified that while driving down Mendon Road in Cumberland to her house in Pawtucket, she approached a police officer who was detouring cars off Mendon Road. After complying with the direction to detour, she noticed a car behind her flashing its lights. She testified that she stopped in the middle of the road, whereupon the vehicle pulled up alongside of her car and she recognized the driver as defendant. He rolled down his window and asked her if she wanted to go to his restaurant in Cumberland and "do a line of co-

---

1. The indictment stated that on March 3, 1986, in the town of Cumberland, the defendant (1) engaged in sexual penetration, to wit, of vagina by penis, (2) engaged in sexual penetration, to wit, of vagina by a stick of pepperoni, (3) engaged in sexual penetration, to wit, of anus by finger (all three first degree sexual assault offenses in violation of G.L.1956 (1981 Reenactment) § 11–37–2 [as amended by P.L.1984, ch. 355, § 1] and § 11–37–3), (4) did commit the abominable and detestable crime against na-

ture, fellatio (in violation of G.L.1956 (1981 Reenactment) § 11–10–1), and (5) engaged in sexual contact by force and coercion (in violation of G.L.1956 (1981 Reenactment) § 11–37–4 [as amended by P.L.1984, ch. 59, § 1] and § 11–37–5).

2. This is a fictional name adopted to conceal the victim's identity.

caine." She said yes and followed him to his restaurant. She further testified that she had done cocaine with defendant before. After entering the restaurant through the back door, Judy testified that she did one line of cocaine and Jette did three.

Judy testified that after doing the cocaine, she told him she was going home. The victim claimed that defendant told her that he would not let her leave and locked the back door. The victim said she then moved to the front of the restaurant. She testified that defendant threw her to the floor and started taking her clothes off. The victim also claimed that defendant slapped her and kept banging her head on the floor.

After defendant took off her pants, Judy claims, he let go of her. While free she got up and threw a chair at a window in an unsuccessful attempt to break it. Judy testified that defendant then grabbed her by the back of her head, pushed her into the back room, and then removed her blouse. She claims that he then forced her to perform oral sex on him and threatened her with a knife.

The victim said that Jette also told her to get up on the counter in the middle of the room, whereupon he attempted sexual intercourse. She testified that he then got a stick of pepperoni out of the cooler and inserted it into her vagina. She said he also inserted his fingers into her rectum. She said that she told him that the pepperoni stick hurt and that it was cold and demanded that he stop.

Judy testified that defendant then stated that he was going to heat it up and proceeded to the stove. While he was engaged in warming the pepperoni stick, she ran out to the front of the restaurant. She stated that she started screaming and yelling and threw another chair that went through a window. The victim claims that when defendant tried to drag her into the back room again, she resisted. He then let go of her, and a few minutes later she saw him drive off in his vehicle. Judy then *called* a friend who came to the restaurant, and the police arrived shortly thereafter.

The defendant's testimony about the events of the night in question is similar to the victim's but with several significant differences. Jette testified that he had met the victim several years before the incident and that they had gone out socially many times. He also claimed that the victim had gone to his restaurant to drink and do cocaine on approximately eight to ten occasions. Sometimes it was just the two of them and other times other friends joined them, he said. He also testified that on several occasions he and the victim had sexual relations.

On the night in question, defendant agrees, he and the victim and her friend met at the Golden Elks Lounge and from there went to Lou's Cafe. Jette and Judy played pool together before she left the cafe, and, defendant stated, he did not see her again until he was driving home and came upon her car on Mendon Road. He testified that her car was swaying slightly and then stopped in the middle of the road. Jette claims that he did not flash his lights or do anything else to make her stop. The defendant said that after she stopped, he asked her if she was all right and then asked her if she wanted to go down to his restaurant to sober up. She followed him to the restaurant.

The defendant's testimony corroborated much of the victim's testimony of the events that occurred while they were in the restaurant; however, he contended that all the sexual acts between the two were consensual. He testified that after he and the victim were in the restaurant for approximately ten minutes, they started to get intimate. The defendant stated that at no time did the victim resist or tell him to stop.

After deliberations the jury returned guilty verdicts on three of the five counts. The defendant's motion for a new trial was denied, and he was sentenced.

■ The first issue defendant raises on appeal concerns the jury verdict. The defendant argues that the jury verdicts were logically and legally inconsistent and unexplainable on a rational basis. Specifically,

defendant argues, it was inconsistent for the jury to convict him on only one of the three first degree sexual assault charges because if the jury believed the alleged victim, it had to convict defendant on the two other first degree sexual assault charges. The defendant points to case law that states that "[i]f the essential elements of the count of which the defendant is acquitted are identical and necessary to prove the count of which the defendant is convicted, then the verdicts are inconsistent." *See State v. Mercado*, 263 S.C. 304, 307–08, 210 S.E.2d 459, 460 (1974). The inconsistency of the verdicts, he claims, warrants a reversal of his conviction and a new trial.

We find no inconsistencies in the verdicts. Here there were three separate counts of sexual assault, one alleging penetration by penis, another alleging penetration with a stick of pepperoni, and another alleging digital penetration. Although the trial justice was "surprised" by the acquittals in the last two counts, he concluded that "the jury was allowed to do that." The court stated:

"Obviously, they [the jurors] didn't believe some of the testimony of the complaining witness * * *. They believed that he had inserted his penis into her vagina and they chose either not to believe or they weren't satisfied, by proof beyond a reasonable doubt, that the pepperoni insertion and the finger insertion did, in fact, take place. There was sufficient evidence in the record for the jury to find [the] defendant guilty of all five * * *. They chose obviously, to discard some of the evidence."

This is not a case in which acquittal of one offense amounted to a finding that the elements of another offense could not be proved. With the evidence presented, the jury could have found that penetration was not accomplished other than by the penis or that if it was, force or coercion was not proved beyond a reasonable doubt. The trial justice was correct in denying defendant's motion for a new trial on these grounds.

■ The defendant also argues on appeal that the remarks of the prosecutor during trial and closing argument were prejudicial enough to amount to reversible error. In particular Jette contends that during the course of the trial the prosecutor made remarks that suggested fabrication of statements by defendant. The defendant argues that the prosecutor attempted to suggest that the alleged fabrications came as a direct result of advice by his attorney. In addition he argues that the prosecutor made prejudicial comments in her closing argument. Specifically, during her closing argument the prosecutor, commenting on defendant's demeanor as he testified, stated: "He was sweating. He was evasive. He was rattled when asked about details * * *. You saw him, kept looking at his attorney while I asked him questions. Looking for help." The defendant argues that these statements, coupled with improper questioning, were highly prejudicial and amounted to reversible error. Further he contends that the trial justice erred in not giving curative instructions to the jury.

In *State v. Padula*, 551 A.2d 687, 691 (R.I.1988), this court stated that "[w]hen a defendant claims that alleged prejudicial remarks form the basis for a mistrial, the trial justice must assess the prejudicial impact of such statements." The court noted that there is no one rule to decide whether a prosecutorial comment is prejudicial as a matter of law. "Rather the trial justice must evaluate the probable effect of the prosecutorial comment by examining the remark in its factual context. The test essentially is 'whether the prosecutorial comment * * * so inflames the passions of the jury as to prevent their calm and dispassionate examination of the evidence.' " *Id.* (quoting *State v. Brown*, 522 A.2d 208, 211 (R.I.1987)).

Applying *Padula* and *Brown*, we believe that the statements here did not "inflame the passions of the jury." The prosecutor's remarks "had an adequate factual basis in the evidence and were within the legitimate inferences that the jury could have drawn." *Padula*, 551 A.2d at 691; *see State v. Conway*, 463 A.2d 1319, 1324

(R.I.1983); *State v. Parente*, 460 A.2d 430, 439 (R.I.1983); *State v. Scott*, 114 R.I. 132, 137, 330 A.2d 66, 70 (1974).

In this case the trial justice reserved his decision on defendant's request for a mistrial. Later, when ruling on the motion, the trial justice stated that he had gone over the comments and was satisfied that as a result of his instructions defendant's rights were not prejudiced. Although defendant did not request a cautionary instruction, the trial justice did tell the jurors: "The attorneys have just made their final arguments to you. If, during the course of those arguments, they referred to certain facts or bits and pieces of the evidence and your recollection differs, by all means accept your recollection as to what transpired during the course of this trial." Even though this may not have been a sufficiently emphatic cautionary instruction in defendant's opinion, we do believe that it informed the jurors that they should rely only upon their collective recollection.

■ The defendant also argues on appeal that the trial justice erred in refusing to allow defendant to cross-examine and to present testimony concerning the victim's prior sexual activity with other men. The defendant claims that he was denied a fair trial when he was prevented from informing the jury of the victim's alleged longstanding relationship with a married man and others. The defendant argues that whereas prior sexual activity with others may be inadmissible to show consent, it should be permitted for the purpose of showing bias, motive, and credibility of the victim. He further asserts that he should have been permitted to present evidence of this nature to show a pattern of behavior similar to the conduct immediately in question.

The defendant is correct that prior sexual activity with others is not admissible to show consent. This court has stated that "[e]vidence of a woman's prior specific sexual acts with persons other than the accused is so tenuously related to whether *she* consented to sex with the accused that it should be excluded as lacking in proba-

tive value and irrelevant to the issue of consent." *State v. Gibbons*, 418 A.2d 830, 836 (R.I.1980); *see also State v. Bernier*, 491 A.2d 1000 (R.I.1985). We reject defendant's alternative argument, however, that in this case alleged prior sexual acts with a person other than defendant should have been admissible to show bias, motive, credibility, or a relevant pattern of conduct. This evidence is irrelevant and was offered for the sole purpose of discrediting the victim in the eyes of the jury. An adequate opportunity to impeach the victim's credibility was afforded defendant during cross-examination.

■ The last issue defendant raises on appeal is whether the trial justice erred in his instructions to the jury. The defendant claims that the trial justice erred in refusing to give his Request No. 35 and Request No. 36. Request No. 35 stated, "The charge of first degree sexual assault is easy to make and difficult to disprove." Request No. 36 stated, "In order to prove the accused guilty of the charges against him, the state must prove lack of consent beyond a reasonable doubt." He also argues that the trial justice's instruction to the jury on the issue of consent was confusing and did not clearly instruct the jury regarding the law of consent.

The instructions to the jury in this case were extensive and a review of the instructions shows that each offense was carefully defined by the court. The use of Request No. 35 would have been clearly unconstitutional and would have contradicted the court's explicit instructions on the presumption of innocence and the burden of the state to prove its case. With respect to Request No. 36, we note that "[j]ury instructions need not be given in the precise form requested as long as they are clearly stated in substance and are adequately covered in the court's charge to the jury." *Vucci v. Meyers Brothers Parking System, Inc.*, 494 A.2d 530, 536 (R.I.1985). In this case the record shows that the court instructed the jury repeatedly and sufficiently on the legal principle set forth in Request No. 36 regarding the burden of proof.

We find the trial justice's instructions on the issue of consent were clear. Each offense was defined by the court with reference to "consent" and the element of "force" or "coercion" required for conviction, with the sole exception of the charge of fellatio. The trial justice instructed the jury that it must determine whether the alleged sexual activity was consensual or whether it was done by force or coercion. In addition, the trial justice told the jury that "as far as consent is concerned * * * [t]he victim, a so-called victim, in these circumstances must resist, if, in fact, the victim feels that resistance is reasonable under the circumstances." The trial justice then gave the jurors an example on the question of when "resistance is reasonable under the circumstances." He also gave the jury a thorough instruction on the meaning of the words "force" and "coercion." He read from G.L.1956 (1981 Reenactment) § 11–37–1, as amended by P.L. 1984, ch. 152, § 1, saying:

"Force or coercion shall mean when the accused uses, or threatens to use, a weapon, or any article used, or fashioned in a manner to lead the victim to reasonably believe it to be a weapon. So, force and coercion means use of a weapon; or (b) overcomes the victim through the application of physical force or physical violence; (c) coerces the victim to submit by threatening to use force or violence on the victim and the victim reasonably believes that the accused has the present ability to execute those threats."

This court has stated that jury charges will be viewed "in their entirety to determine whether the trial justice delineated the legal principles to comport sufficiently with due process requirements." *State v. Bibee*, 559 A.2d 618, 619 (R.I.1989). In this case we believe the instructions as a whole were clear and adequate.

For all these reasons the defendant's appeal is denied and dismissed, and the conviction appealed from is affirmed.