DECISION
Before this Court for decision is an appeal by Sean Duffy ("Duffy" or "Plaintiff") of a decision rendered by a Hearing Board ("Board") formed pursuant to the Law Enforcement Officers' Bill of Rights Act ("LEOBOR" or "LEOBOR Act"). The Board terminated Duffy from his position with the West Warwick Police Department ("WWPD" or "Defendant"). Duffy now moves this Court to vacate the findings of the Board, dismiss all counts which are duplicitous, and convene a new, unbiased Hearing Board to provide Duffy with a new hearing. Jurisdiction is pursuant to G.L. 1956 §§42-28.6-12 and 42-35-15.
 FACTS AND TRAVEL
On or about April 4, 2004, West Warwick Patrolman Sean Duffy was involved in an altercation occurring inside the West Warwick Police Station. The altercation arose initially between fellow Patrolman Jonathan Izzi ("Izzi") and Duffy and the unfortunate incident appears to have begun as a direct result of what was described as "good natured bantering"[1] instigated by other members of the West Warwick Police Department, including Izzi and Sgt. Fernando Araujo. The altercation escalated and finally resulted in *Page 2 
assault charges against Duffy, as well as a host of other department charges against Duffy.
Pursuant to the LEOBOR Act, a Hearing Board was formed and a hearing commenced on February 9, 2007 and continued on February 27 and 28, 2007. The hearing concluded with Duffy's testimony and closing arguments by respective counsel on March 1, 2007. The Board met in executive session on March 21, 2007, and rendered a decision signed by two (2) of the Board members on March 26, 2007, while the third member signed the decision on March 29, 2007, and filed a written dissent along with same.
The Board's majority decision contains a factual synopsis that is reflective of the entire record. The synopsis reads as follows, "In summary, the complaint alleges that on April 4, 2004 Officer Sean Duffy came into the station on a dinner break after purchasing Chinese food at a local restaurant. Officer Duffy entered the roll call room and placed his bag of food on the table. This room is a multi-purpose room used for roll call, dinner break and serves as a workstation for officers completing their reports. Officer Duffy left the room for a short period of time to wash his hands and to get a soda. Sgt. Araujo came into the room while Officer Duffy was out and looked in the bag of food and started what was described as good-natured bantering telling an officer in the room (Jason Senerchia) not to touch Officer Duffy's food. This officer was known for having a large appetite. Officer Duffy came into the room and the bantering continued. At some point Officer Jonathan Izzi came into the room and continued the bantering."
"The Town charges that at some point after this, Officer Duffy committed an assault and battery on Officer Jonathan Izzi. When Sgt. Fredrick Araujo and Officer *Page 3 
Jason Senerchia attempted to break up the fight, Officer Duffy committed an assault and battery of both of those officers. According to the complaint, Officer Duffy then committed acts of disorderly conduct by threatening Officer Izzi; failing to follow the lawful commands of Sgt. Araujo; and refusing to relinquish his weapon to Sgt. Araujo when ordered to do so." See Decision at p. 1.
On November 30, 2007, Chief Peter T. Brousseau of the WWPD issued a Complaint and Notice to Duffy consisting of some seventeen (17) charges and specifications. After hearing testimony and taking evidence, the Board found Duffy "guilty" of ten (10) of the charges and "not guilty" of seven (7) of the charges.[2] Due to the issues framed in the instant appeal, it is best to set forth the exact charges, specifications, and findings of the Board verbatim.[3]
 "Charge 1: Violation of the West Warwick Police Department Rules and Regulations, "oath of Office," per the Town Charter which provides in part, to wit: "All persons selected for appointment as police officers for the West Warwick Police Department shall take and subscribe to the following oath of office prior to commencing their duties. . . I do solemnly swear that I will support the Constitution of the United States of America and the State of Rhode Island and Providence Plantations; and I will in all respect observe the provisions of the Charter and Ordinances of the Town of West Warwick, and will faithfully discharge the duties of a Patrolman in the Town of West Warwick Police Department."
 Specification 1: In that on or about April 4, 2004, Sean C. Duffy, failed to execute and enforce the law and preserve *Page 4 
the peace, and violated R.I.G.L. 11-5-3, to wit: by making an ASSAULT/ and or BATTERY upon the body of Patrolman Jonathan Izzi, by grabbing his throat and striking him several times in the head with a closed fist.
 GUILTY 3-0: The board unanimously determined that by a preponderance of evidence that Officer Duffy did in fact commit an assault and battery on Patrolman Jonathan Izzi
 Charge 2: Violation of the West Warwick Police Department Rules and Regulations, "oath of Office," per the Town Charter which provides in part, to wit: "all persons selected for appointment as police officers for the West Warwick Police Department shall take and subscribe to the following oath of office prior to commencing their duties. . . I do solemnly swear that I will support the Constitution of the United States of America and the State of Rhode Island and Providence Plantations; and I will in all respect observe the provisions of the Charter and Ordinances of the Town of West Warwick, and will faithfully discharge the duties of a Patrolman in the Town of West Warwick Police Department."
 Specification 2: In that on or about April 4, 2004, Sean C. Duffy, failed to execute and enforce the law and preserve the peace, and violated R.I.G.L. 11-5-3, to wit: by making an ASSAULT/ and or BATTERY upon the body of Sergeant Fernando Araujo, by striking him in the chest with a closed fist and pushing him causing him to fall over a table.
 GUILTY 2-1 (Johnson dissenting) The majority of the board concluded that by a preponderance of the evidence that Patrolman Duffy did commit an assault and battery on Sgt. Fred Araujo. Captain (ret.) Johnson dissented because he felt that there was no intent to commit an assault.
 Charge 3: Violation of the West Warwick Police Department Rules and Regulations, "oath of Office," per the Town Charter which provides in part, to wit: "all *Page 5 
persons selected for appointment as police officers for the West Warwick Police Department shall take and subscribe to the following oath of office prior to commencing their duties. . . I do solemnly swear that I will support the Constitution of the United States of America and the State of Rhode Island and Providence Plantations; and I will in all respect observe the provisions of the Charter and Ordinances of the Town of West Warwick, and will faithfully discharge the duties of a Patrolman in the Town of West Warwick Police Department."
 Specification 3: In that on or about April 4, 2004, Sean C. Duffy, failed to execute and enforce the law and preserve the peace, and violated R.I.G.L. 11-5-3, to wit: by making an ASSAULT/ an or BATTERY upon the body of Patrolman Jason Senerchia, by pushing him in the chest area causing him to be pushed back into a wall telephone.
 NOT GUILTY 2-1 (Boulton Dissenting). The majority of the board felt based on [a] preponderance of the evidence and through direct testimony by Patrolman Senerchia that the assault and battery in this charge was incidental to the disturbance.
 Charge 4: Violation of the West Warwick Police Department Rules and Regulations, "oath of Office," per the Town Charter which provides in part, to wit: "all persons selected for appointment as police officers for the West Warwick Police Department shall take and subscribe to the following oath of office prior to commencing their duties. . . I do solemnly swear that I will support the Constitution of the United States of America and the State of Rhode Island and Providence Plantations; and I will in all respect observe the provisions of the Charter and Ordinances of the Town of West Warwick, and will faithfully discharge the duties of a Patrolman in the Town of West Warwick Police Department."
 Specification 4: In that on or about April 4, 2004, Sean C. Duffy, failed to execute and enforce the law and preserve the peace, and violated R.I.G.L. 11-45-1,(a)l, to wit: by acting in a DISORDERLY CONDUCT by intentionally, knowing and recklessly engaging in fighting, threatening, violent and tumultuous behavior while in a public place by striking Officer Jonathan Izzi and causing a disturbance within the West Warwick Police Department that interfered *Page 6 
with the normal operations of the department and put the general public at risk.
 NOT GUILTY 2-1 (Boulton Dissenting) The majority of the board felt that this charge was duplicitous with Charge # 14
 Charge 5: Violation of the West Warwick Police Department Rules and Regulations, Article 5, Section 16: "No member of the Department shall attempt or threaten to strike or assault any other member of the Department."
 Specification 5: In that on or about April 4, 2004, Sean C. Duffy did attempt or threaten to "fuckin Kill" Officer Jonathan Izzi and other officers while he was engaged in an assault and battery of Officer Jonathan Izzi, striking him in an out of control manner.
 GUILTY 2-1 (Johnson Dissenting) The majority of the board found by a preponderance of the evidence that Patrol Officer Duffy did verbally threaten Patrolman Izzi. Captain Johnson felt that this charge was duplicitous.
 Charge 6: Violation of the West Warwick Police Department Rules and Regulations, Article 5, Section 17: "No member of the Department shall willfully disobey any lawful command of a supervising officer of the Department."
 Specification 6: In that on or about April 4, 2004, Sean C. Duffy did refuse a direct order issued by Sgt. Fernando Araujo when he was ordered to stop assaulting, Officer Jonathan Izzi. Sgt. Fernando Araujo tried to intervene but was thrown to the ground by Officer Sean Duffy, all the while Sgt. Fernando Araujo was yelling for Officer Sean Duffy to stop, but he continued.
 GUILTY 3-0 The board unanimously found by a preponderance of the evidence that patrolman Duffy did in fact fail to obey the verbal orders of Sgt. Araujo.
 Charge 7: Violation of the West Warwick Police Department Rules and Regulations. Article 5, Section 17: "No member of the Department shall willfully disobey any lawful command of a supervising officer of the *Page 7 
Department."
 Specification 7: In that on or about April 4, 2004, Sean C. Duffy did refuse a direct order issued by Sgt. Fernando Araujo when he was ordered to remain in the second floor break room to avoid any further conflict with Officer Jonathan Izzi.
 NOT GUILTY 2-1 (Boulton Dissenting) The board was unable sustain this charge by a preponderance of the evidence
 Charge 8: Violation of the West Warwick Police Department Rules and Regulations, Article 5, Section 17: "No member of the Department shall willfully disobey any lawful command of a supervising officer of the Department."
 Specification 8: In that on or about April 4, 2004, Sean C. Duffy did refuse a direct order issued by Sgt. Fernando Araujo when he was ordered to relinquish and surrender his service weapon. He was ordered several times during this incident to relinquish and surrender his service weapon while in the men's locker room of the West Warwick Police Department and refused each request.
 GUILTY 2-1 (Johnson Dissenting) The majority of the board found by a preponderance of the evidence that Patrolman Duffy did fail to follow this order by Sgt. Araujo to relinquish his weapon. The majority of the board felt that the contradictory testimony of Patrolman Stephen Vannini to be not credible. Upon cross-examination Patrolman Vannini testified that he didn't "hear" the order given by Sgt. Araujo after testifying on direct that it had not been given.
 Charge 9: Violation of the West Warwick Police Department Rules and Regulations, Article 5, Section 18: "No member of the Department shall use threatening or insulting language or behave in any insubordinate manner toward any member of the Department."
 Specification 9: In that on or about April 4, 2004, Sean C. Duffy did use threatening or insulting language against Officer Jonathan Izzi, yelling that he was going to "Fuckin *Page 8 
Kill You", and that he would get Officer Jonathan Izzi while he was off duty.
 NOT GUILTY The board felt that this charge was duplicitous with Charge # 5
 Charge 10: Violation of the West Warwick Police Department Ruled and Regulations, Article 5, Section 18: "No member of the Department shall use threatening or insulting language or behave in any insubordinate manner toward any member of the Department."
 Specification 10: In that on or about April 4, 2004, Sean C. Duffy did use threatening, insulting language and behaved in an insubordinate manner. When he was told by Sgt. Fernando Araujo to stop fighting, he continued to yell and scream obscenities towards Officer Jonathan Izzi.
 NOT GUILTY The board felt that this charge was also duplicitous with Charge # 5
 Charge 11: Violation of the West Warwick Police Department Rules and Regulations, Article 5, Section 19: "Conduct Unbecoming a Police Officer", which provides in part, to wit: "No member of the West Warwick Police Department shall act or behave in an official capacity in such a manner as to dishonor or disgrace themselves as a member of the department, or shall engage in any conduct unbecoming a Police Officer."
 Specification 11: In that on or about April 4, 2004, Sean C. Duffy did engage in "Conduct Unbecoming a Police Officer" by physically striking Officer Jonathan Izzi with a closed fist and grabbing him by the throat causing injuries that required medical treatment and lost time as a police officer.
 GUILTY 2-1 (Johnson Dissenting) The majority of the board found by a preponderance of the evidence that the actions of Patrolman Duffy on April 4, 2004 violated Article 5 Section 19 "Conduct unbecoming a Police Officer". Captain Johnson felt the charge was duplicitous.
 Charge 12: Violation of the West Warwick Police Department Rules and Regulations, Article 5, Section 19: *Page 9 
 "Conduct Unbecoming a Police Officer", which provides in part, to wit: "No member of the West Warwick Police Department shall act or behave in an official capacity in such a manner as to dishonor or disgrace themselves as a member of the department, or shall engage in any conduct unbecoming a Police Officer."
 Specification 12: In that on or about April 4, 2004, Sean C. Duffy did engage in "Conduct Unbecoming a Police Officer", by refusing to obey the lawful commands of his immediate supervisor, Sgt. Fernando Araujo. He refused to comply with Sgt. Fernando Araujo's command and direct order to stop assaulting Officer Jonathan Izzi and continued yelling, and swearing profanities while assaulting Officer Jonathan Izzi.
 GUILTY 2-1 (Johnson Dissenting) The majority of the board found by a preponderance of the evidence that the actions of Patrolman Duffy on April 4, 2004 violated Article 5 Section 19 "Conduct unbecoming a Police Officer" by refusing to follow the lawful orders of Sgt. Araujo. Captain Johnson felt the charge was duplicitous.
 Charge 13: Violation of the West Warwick Police Department Rules and Regulations, Article 5, Section 19: "Conduct Unbecoming a Police Officer", which provides in part, to wit: "No member of the West Warwick Police Department shall act or behave in an official capacity in such a manner as to dishonor or disgrace themselves as a member of the department, or shall engage in any conduct unbecoming a Police Officer."
 Specification 13: In that on or about April4, 2004, Sean C. Duffy did behave in "Conduct Unbecoming a Police Officer" by violating Gen Law 11-45-1, 1,29B0, disorderly conduct by intentionally, knowingly, and recklessly engaging in fighting, threatening, violent and tumultuous behavior in a public place by assaulting Officer Jonathan Izzi by hitting him with closed fists, causing an uproar and disturbance within the Department, interfering with the normal operations of the police department, and putting the general public at risk.
 GUILTY 2-1 (Johnson Dissenting) The majority of the board found by a preponderance of the evidence that the *Page 10 actions of Patrolman Duffy were sustained in this specification.
 Charge 14: Violation of the West Warwick Police Department Rules and Regulations, Article 5, Section 55: "No member of the Department shall become Disorderly in a public place at (anytime), whether on or off duty."
 Specification 14: In that on or about April 4, 2004, Sean C. Duffy did behave disorderly while in a public place, to wit: West Warwick Police Department, by engaging in tumultuous, violent behavior when he grabbed Officer Jonathan Izzi by the throat, struck him about the head and chest with a closed fist repeatedly while being told by fellow officers and his immediate supervisor Sgt. Fernando Araujo to stop.
 GUILTY 3-0 The board found by a fair preponderance of the evidence that Patrolman Duffy did engage in disorderly conduct in violation of this charge.
 Charge 15: Violation of the West Warwick Police Department General Policy 97-8, Workplace Threats and Violence Policy, which provides in relevant part, ". . . the safety of employees of the West Warwick Police Department as well as members of the public who conduct business within the West Warwick Police Department premises are of paramount importance to the West Warwick Police Department. It is the policy of the West Warwick Police Department to strive to maintain a work environment free from intimidation, threats, or violent acts. This includes but is not limited to intimidating, threatening or hostile behavior, physical abuse, vandalism, arson, sabotage, use of weapons, carrying unauthorized weapons onto the property, or any act which, in management's opinion is inappropriate to the workplace. In addition bizarre or offensive comments regarding violent events and/or behavior will not be tolerated."
 Specification 15: In that on or about April 4, 2004, Sean C. Duffy did violate the Workplace Threats and Violence Policy by assaulting Officer Jonathan Izzi by repeatedly striking him in the head and chest with a closed fist, *Page 11 
grabbing him by the throat and eventually throwing him to the ground, and also by assaulting Sgt. Fernando Araujo by striking him in the chest with a closed fist and pushing him causing him to fall over a table.
 GUILTY 2-1 (Johnson Dissenting) The board found through a fair preponderance of evidence that the assault and battery by Patrolman Duffy on Patrolman Izzi was a violation of the West Warwick Police Department's Workplace Violence Policy 97-8.
 Charge 16: Violation of the West Warwick Police Department General Policy 97-8, Workplace Threats and Violence Policy, which provides in relevant part, ". . . the safety of employees of the West Warwick Police Department as well as members of the public who conduct business within the West Warwick Police Department premises are of paramount importance to the West Warwick Police Department. It is the policy of the West Warwick Police Department to strive to maintain a work environment free from intimidation, threats, or violent acts. This includes but is not limited to intimidating, threatening or hostile behavior, physical abuse, vandalism, arson, sabotage, use of weapons, carrying unauthorized weapons onto the property, or any act which, in management's opinion is inappropriate to the workplace. In addition bizarre or offensive comments regarding violent events and/or behavior will not be tolerated."
 Specification 16: In that on or about April 4, 2004, Sean C. Duffy did violate the Workplace Threats and Violence Policy by making threats to "Kill" Officer Jonathan Izzi and violently threatening and attacking him as set forth in specifications 1, 4, 5, 9, 11, 12, 13 and 14, which are incorporated by reference herein, and directing violence to other members of the West Warwick Police Department, namely Sgt. Fernando Araujo and Officer Jason Senerchia, as set forth in Specifications 2, 3, 6, 7 and 10, which are incorporated by reference herein. His actions were hostile, threatening, and physically abusive in nature and were inappropriate for the workplace.
 NOT GUILTY The board felt that this charge was duplicitous with Charge #15 *Page 12 
 Charge 17: Violation of the West Warwick Police Department Rules and Regulations, Article 5, Section 19: "Conduct Unbecoming a Police Officer", which provides in part, to wit: "No member of the West Warwick Police Department shall act or behave in an official capacity in such a manner as to dishonor or disgrace themselves as a member of the department, or shall engage in any conduct unbecoming a Police Officer that discredits the Department."
 Specification 17: In that on or about April 4, 2004, did inappropriately, unprofessionally, disreputably, negligently, and/or intentionally commit unlawful acts in violation of the United States Constitution, the Rhode Island Constitution, the General Laws of the State of Rhode Island, the Rules and Regulations of the West Warwick Police Department, the Policies and Procedures of the West Warwick Police Department, all as more fully set forth in specification 1-16, above, which are Incorporated by reference herein. This misconduct was publicized in the media on divers dates on or after April 4, 2004.
 NOT GUILTY The board also felt that this charge was duplicitous. " Decision signed on March 26, 2007 and March 29, 2007.
 ISSUE PRESENTED ON APPEAL
The Plaintiff raises three issues on appeal. First, Plaintiff claims that the charges, specifications and findings of fact were duplicitous to the extent that Plaintiff was terminated because the same acts were used as the basis for several violations which were essentially the same charge making the punishment an abuse of discretion or clearly an unwarranted exercise of discretion. Second, Plaintiff maintains that there was not even a scintilla of evidence to prove Plaintiff was acting in an official capacity relative to charges 12 and 13. Plaintiff's third and last contention is that certain remarks, made by the prosecutor at closing argument, were prejudicial to the extent that such remarks served to deprive Plaintiff of due process. *Page 13 
 STANDARD OF REVIEW
"The Law Enforcement Officers' Bill of Rights, enacted in 1976, is the exclusive remedy for permanently appointed law-enforcement officers who are under investigation by a law-enforcement agency for any reason that could lead to disciplinary action, demotion, or dismissal." City of EastProvidence v. McLaughlin, 593 A.2d 1345, 1348 (R.I. 1991) (citingLynch v. King, 120 R.I. 868, 870 n. 1, 391 A.2d 117, 119 n. 1 (1978)). Under this Act, any law enforcement officer facing charges that may result in punitive action may request a hearing before a committee comprised of three active or retired law enforcement officers. Sections42-28.6-1, 42-28.6-4. This committee has broad discretion to sustain, modify, or reverse the charges. See Section 42-28.6-11; see also Culhanev. Denisewich, 689 A.2d 1062, 1064-65 (R.I. 1997) (citing State Dep't.of Envtl. Mgmt. v. Dutra, 121 R.I. 614, 401 A.2d 1288 (1978) (citations omitted)).
An officer may appeal to the Superior Court from a decision made by the committee. See Section 42-28.6-12. For the purpose of such an appeal, the committee is "deemed an administrative agency and its final decision shall be deemed a final order in a contested case within the meaning of §§ 42-35-15 and 42-35-15.1." See Section 42-28.6-12(a). Accordingly, this Court must apply the standard of review as set forth in § 42-35-15(g):
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; *Page 14 
 (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision pursuant to § 42-35-15, the Court may not substitute its judgment for that of the agency with respect to credibility of witnesses or the weight of evidence concerning questions of fact. Ctr. for Behavioral Health, R.I., Inc. v. Barros, 710 A.2d 680,684 (R.I. 1998). As such, the Court's review is confined to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision."Johnston Ambulatory Surgical Assocs., Ltd. v. Nolan, 755 A.2d 799, 805
(R.I. 2000) (quoting Barrington Sch. Comm. v. R.I. State Labor RelationsBd., 608 A.2d 1126, 1138 (R.I. 1992)); see also Newport Shipyard v. R.I.Comm'n for Human Rights, 484 A.2d 893, 896-97 (R.I. 1984). Competent or substantial evidence is that which a reasonable mind might accept to support a conclusion. Newport Shipyard, 484 A.2d at 897 (quotingCaswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). The Court "may reverse [the] findings of the administrative agency only in instances where the conclusions and the findings of fact are totally devoid of competent evidentiary support in the record, or from the reasonable inferences that might be drawn from such evidence."Bunch v. Bd. of Review, 690 A.2d 335, 337 (R.I. 1997) (citations omitted). In this respect, the Court's review is both limited and highly deferential. Culhane, 689 A.2d at 1064. However, the *Page 15 
Court reviews questions of law de novo. Narragansett Wire Co. v.Norberg, 118 R.I. 596, 376 A.2d 1 (1977).
 ANALYSIS Duplicitous Charges
Plaintiff argues that the charges, specifications and findings of fact were duplicitous to the extent that Plaintiff was terminated because the same acts were used as the basis for several violations which were essentially the same charge thus making the punishment an abuse of discretion or clearly an unwarranted exercise of discretion.
A review of the findings of the Board would appear to indicate that the Board was certainly cognizant of and sensitive to the argument that some charges were duplicitous. The Board's findings in this regard (relating to allegedly duplicitous charges) have been set forth verbatim above. The Board unanimously found Duffy not guilty of charges 9, 10, 16, and 17 and explicitly stated that the charges were duplicitous to other charges under consideration. Additionally, the Board also found, by a 2 to 1 margin, that Duffy was not guilty of charges 4 and 5, indicating that those particular charges were duplicitous to other charges under consideration. Likewise by a 2 to 1 margin, the Board found Duffy guilty of charges 11 and 12 (involving Conduct Unbecoming a Police Officer). The decision reflects the dissenting vote that felt those charges were duplicitous as well. In sum, out of the eight (8) charges where the concept of duplicitous charges was implicated in the text of the decision, Duffy prevailed on six (6) of the charges.
Duffy alleges that in the entire context of the proceeding, the guilty findings on charges 11 and 12, along with the other guilty findings, lead to the conclusion that Duffy was terminated based upon thesheer number of guilty findings in the decision. *Page 16 
Specifically, Duffy claims that "[t]he inclusion of charges 7, 11, 12, 13, 14, and 15 gives more weight to [his] argument that he did not receive a fair hearing as required." Pl's Mem. at 12. In essence, the Plaintiff alleges that the charges against him, based upon the same or identical conduct, were so numerous as to taint the administrative findings of the Board as arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.See Section 42-35-15(g)(6).
The Defendant, in rejoinder, asserts that Duffy was terminated for an incident of workplace violence. The Court notes that the Board unanimously found Duffy guilty of charges 1, 6, and 14. The respective specifications of those charges involved assaulting Officer Izzi, failure to obey an order of Sgt. Araujo to stop assaulting Officer Izzi, and engaging in disorderly conduct during the assault on Officer Izzi.
The Court's role with regard to Plaintiff's "duplicitous charges" arguments involves analyzing whether the Board's determinations, or the Police Chief's initial charges and specifications, were made rationally and in good faith. Guy v. Southeastern Iron Workers' Welfare Fund,877 F.2d 37 (11th Cir. 1989) (cited with approval inGoncalves v. National Maritime Union Pension Trust, 818 A.2d 678, 683 at n. 3. (R.I. 2003)). There is no evidence that the Chief of Police intentionally increased the number of charges against Duffy in order to increase the chances of termination. There is no argument in the record that the Chief of Police acted in bad faith in his preparation of the initial charges and specifications.
Further, in reviewing the record in this regard, the Court is aware that the Hearing Board must, at a minimum, indicate the evidence upon which it relies. It is not sufficient to simply set out the charges verbatim followed by the wording "guilty" or "not guilty." *Page 17 
 See Section 42-28.6-11(b) and Dionne v. Jalette, 641 A.2d 744 (R.I. 1994). In the instant case, the Board has added a sentence (in some instances two (2) sentences) directly after their guilty findings. The additional verbiage (as set forth above) generally restates the charge or specification related to that particular charge.
The Court notes that the Board unanimously agreed that there was just cause to impose discipline on Duffy. Decision at pg. 8. The Board made further comments on some of the testimony in the case noting that one witness, (Patrolman Vannini), displayed a "selective memory"; Patrolman Senerchia was found to be "very credible"; Patrolman Izzi stated that he could not work with Duffy again should Duffy be returned to duty; and that the testimony of the dispatchers was important as they had "called all remaining cars from the road fearing that Sergeant Araujo and patrolman Senerchia would not be able to control Patrolman Duffy."See Decision at pg. 9.
The Board found that there was ample evidence that Patrolman Duffy threatened Patrolman Izzi noting that Patrolman Senerchia testified to that fact and it was corroborated by Sgt. Araujo and Dispatcher Goozey-Nye and former Dispatcher Pesare. Id.
The Board went on to comment that they found Patrolman Duffy's testimony "particularly troublesome," especially in regard to Patrolman Duffy's claim that he had no intention to fight; that it was Patrolman Izzi who had grabbed onto Patrolman Duffy when Duffy got close to Izzi; that Duffy was in fear of Patrolman Izzi; and that Duffy never noticed Sgt. Araujo until "after he got up from the floor." The Board considers it "problematic" in that they felt that Patrolman Duffy's testimony was "either false or that there [was] a problem with Duffy's perception of reality" when considered in the entire *Page 18 
context of the case. The Board noted that "one fundamental essential requirement of a police officer is to be truthful and to be able to accurately record the facts and circumstances." The Board added that "Patrolman Duffy fails in one or both of those criteria."Decision at pgs. 10-12.
During the hearing, testimony was received from Chief Brousseau indicating the cost of the entire incident on his department, including its tarnished image. He testified that he considered the incident "a violent attack and . . . several members of the department expressed concern to him about Patrolman Duffy returning." Decision at pg. 11.
It is clear that an individual can be terminated for workplace violence. See Catholic Cemeteries v. R.I. Laborers District Council, onBehalf of Local Union 271, C.A. No. 04-6148, 2005 R.I. Super Lexis 58, April 22, 2005. (Superior Court vacated arbitrator's favorable ruling that reinstated employee who had made threatening references to his own guns), and Daniels v. Andrukiewicz, C.A. No. PC02-2782, 2002 R.I. Super. Lexis 175, December 13, 2002. (upholding termination of police officer for assault on fellow officers and citizens' complaints).
In light of the foregoing analysis, the Court finds Plaintiff's argument that he was terminated because the same acts were used as the basis for several violations which were essentially the same charge is unpersuasive. After reviewing the Board's decision, the transcripts, and other parts of the certified record, this Court cannot say that the Board's conclusions and findings of fact are totally devoid of competent evidentiary support in the record. It is apparent to the Court that competent evidence exists on the record to support the Board's conclusions. *Page 19 
 Evidence Plaintiff was Acting in an Official Capacity
Plaintiff next argues that there is inadequate proof that Plaintiff was acting in an official capacity relative to charges 12 and 13. Those charges involve allegations that Plaintiff violated Article 5, Section 19 of the West Warwick Police Department Rules and Regulations ("Conduct Unbecoming a Police Officer") by refusing to obey the lawful commands of Sgt. Araujo during the time Plaintiff was assaulting Patrolman Izzi. That is the substance of charge 12 and Plaintiff was found guilty by a 2 to 1 margin while the dissent felt the charge was duplicitous. Charge 13 involves the same section of the Rules and Regulations while the specifications relate to Plaintiff's actual assault on Patrolman Izzi. Again, Plaintiff was found guilty by a 2 to 1 margin, but the decision does not indicate exactly why the dissent voted in opposition.
The entire record clearly indicates that Duffy was on duty at the time the incident occurred. The actual incident occurred on April 4, 2004 in the roll call room of the West Warwick Police Station. See Tr. of 3-1-07 at pg. 11. As such, the Board's findings cannot be taken lightly. It is well-established that a higher level of deference is owed when a court reviews agency determinations of matters within the agency's specialized expertise. See R.I. Higher Education Assistance Authority v. Secretary,U.S. Dept. of Education, 929 F.2d 844, 857 (1st Cir. 1991) (citing Lile v. University of Iowa Hospitals and Clinics,886 F.2d 157, 160, (8th Cir. 1989); Building and ConstructionTrades Dept., AFL-CIO v. Brock, 838 F.2d 1258, 1266 (D.C. Cir. 1988)) ("It is apodictic that a reviewing court shall accord an agency's decision considerable deference when that decision involves a technical question within the field of the agency's expertise."). See also HealthManagement Co. v. R.I. Dept. of Environmental Management, P.C. No. 05- *Page 20 
3232, 2006 R.I. Super. Lexis 54, May 15, 2006. (In the context of a decision of the R.I. Department of Environmental Management, the Superior Court, concluding that future rights of development were distinguishable from present possessory rights, noted "[a] higher level of deference is owed when reviewing agency determinations within the agency's specialized expertise."). For purposes of an appeal under the LEOBOR Act, the Board "shall be deemed an administrative agency" within the meaning of § 42-35-15. See Section 42-28.6-12. Our Supreme Court, in the case of In re Raymond Denisewich, 643 A.2d 1194 (1994) has commented in one context:
 The clear purpose behind the requirement that the committee members be `active law enforcement officers' is to afford protection to those charged with departmental violations by ensuring that the hearing committee is composed of individuals who are familiar with departmental practices and procedure during the appropriate timeframe. [Internal citation omitted]. Officers carrying out the daily routine of police work contemporaneously with the alleged in fraction will be in the best position to judge another officer's actions. . . ." Id. at 1198.
A reviewing court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Bunch v. Board of Review, R.I. Dept. ofEmployment and Training, 690 A.2d 335, 337 (R.I. 1997); Milardo v.Coastal Resources management Council, 434 A.2d 266, 272 (R.I. 1971). Based upon the specific record and the deference that must be given to the Board, this Court cannot say that the Board's factual findings relative to charges 12 and 13 are totally devoid of competent evidentiary support in the record. *Page 21 
 Due Process
Plaintiff concludes by arguing that certain remarks made by the prosecutor at closing argument were prejudicial and deprived the Plaintiff of due process of law. The particular remarks raised the specter of personal liability of the individual members of the Board. Specifically, the record reveals that the following remarks were made as evidenced in the March 1, 2007 Transcript of Final Arguments beginning on Page 198 at Line 19 thereof. Relevant portions are set forth below
 "So, for example, if Duffy were to go out on the street, if he were ever to be reinstated, and pray God that doesn't happen, and there was a liability-producing situation, well there would be liability extended to a number of people, not just his employer. Don't forget, you folks don't have immunity under the Law Enforcement Officers' Bill of Rights. You are not arbitrators. You are not mediators. You are not judges. You, in effect, are surrogate employers. . . ." Tr. at pg. 198, lines 15-24; pg. 199, line 1.
 ". . .[The police chief] recommended termination. But the decision on what happens to Sean Duffy rests with the three of you. . . ." Tr. at pg. 199, lines 7 — 9.
 ". . . If anything were ever to happen, this would be a field day for a plaintiff's lawyer." Tr. at pg. 199, line 24 and pg. 200, line 1.
Plaintiff's attorney placed an objection on the record:
 ". . . Also the personal liability issue I think was inappropriate to be argued. I do believe that is the status of the law. I think [that] [is] inappropriate and I want to put that objection on the record." Tr. at pg. 206, lines 7-12.[5]
It is well-settled that questions of law are not binding upon a reviewing court in this context and may be reviewed to determine what the law is and its applicability to the facts. Narragansett Wire Co. v.Norberg, 118 R.I. 596, 607, 376 A. 2d 1, 6 (R.I. 1977). *Page 22 
In this context, Plaintiff argues that the relevant test is whether the prosecutorial comment was so inflammatory as to prevent the Board's calm and dispassionate examination of the evidence. See State v.Padula, 551 A.2d 687, 691 (R.I. 1988). Furthermore, a court is required to "evaluate the probable effect of the prosecutorial comment by examining the remark in its factual context" and determine whether the remark had an adequate factual basis in the evidence and was within the legitimate inferences that a fact finder could have drawn. See Id.;State v. Jette, 569 A.2d 438, 441 (R.I. 1990).
In the instant case, the law regarding the Board's liability is controlled by § 42-28.6-16. That section of law provides for a limited immunity for board members as follows:
 42-28.6-16 Immunity of hearing committee members.- No member of a hearing committee constituted in accordance with the provisions of this chapter shall be held civilly liable for any breach of his or her duties as such member, provided that nothing herein shall eliminate or limit the liability of a qualified member:
 (1) For acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; or
 (2) For any transaction from which such member derived an improper personal benefit; or
 (3) For any malicious, willful or wanton act.
Hence, board members have an immunity from civil liability unless their actions or omissions were not in good faith, involved intentional misconduct or knowing violation of the law, were the result of any transaction from which such member derived an improper personal benefit, or where the actions of such board member(s) was/were malicious, willful or wanton. *Page 23 
The Plaintiff argues that such remarks have an "obvious and chilling effect on a person's judgment such that it would prevent their calm and dispassionate examination of the evidence." Plaintiff maintains that the Board was not simply weighing the facts from that moment on, but weighing their own personal stake in the outcome as well. See Pl's Mem.of Fact and Law at pg. 9. Defendant vigorously disputes Plaintiff's arguments in this regard and notes that both Padula and Jette, supra, discuss improper comments in the context of a criminal prosecution while the instant matter is clearly a civil proceeding. It appears to this Court that more is needed in order to determine what the law is on this particular issue. Norberg, supra. The Court also needs to consider the law's applicability to the facts in the precise context of this case, the precise context of what was said, the statutory provision of immunity for Board members under § 42-28.6-16, and the context of an administrative appeal under § 42-35-15.
Plaintiff's initial argument boils down to the following premises. First, due process means receiving a fair trial in the context of an administrative proceeding. The next premise is that improper comment can result in a trial that is not fair. The final premise is that improper comment that results in a trial that is not fair is a violation of that party's due process. If Plaintiff is able to prevail on the preceding three propositions, the Court will next determine the law's applicability to the facts of the case in the proper context.
Certainly, a fair trial in a fair tribunal is a basic requirement of due process. Davis v. Wood, 427 A.2d 332, 336 (1981) (citing In reMurchison, 349 U.S. 133, 136 (1955)). This requirement is as applicable to administrative agencies as it is to the courts. Davis, *Page 24 427 A.2d at 336 (citing Withrow v. Larkin, 421 U.S. 35 (1975)). Moving to the next premise, the Court finds that suggesting the Board may be subject to personal liability if Duffy is not terminated appears to be a variation of the so-called "golden rule" argument which seeks to ask jurors to place themselves in the shoes of the plaintiff and do unto him as they would have him do unto them under similar circumstances. Such an argument is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. See Ivy v.Security Barge Lines, Inc., 585 F.2d 732, 741 (5th Cir. 1978) (citations omitted). See also Silveira v. Murray, 96 R.I. 384,387, 192 A.2d 18, 20 (1963). Regarding the variation in the instant case, the suggestion of personal liability for failing to follow a particular recommendation also encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. Depending on the precise context, the argument may rise to the level of unfairness where a party may not receive a fair trial. And, finally, if the trial is not fair, the due process rights of that party are implicated. Davis, 427 A.2d at 336. Defendant concedes, in its Memorandum, that it "would likely be an error or law for committee members to decide a police officer's fate out of fear for their own liability rather than on the merits. . ." See Def'sMem. at pg. 35.
An analysis of the facts in light of the unfairness argument is the next logical step. The prosecutor at the hearing clearly told the Board members that they did not have immunity under the Law Enforcement Officers' Bill of Rights. Tr. of 3/1/07 at pg. 198. The transcript and remaining record is devoid of any attempt to cite or explain the provisions of § 42-28.6-16 and the various distinctions within that section of law. The *Page 25 
record is clear that Plaintiff's counsel did make an objection immediately after the final argument. Tr. of 3/1/07 at pg. 206. However, he likewise did not attempt to cite or explain the provisions of §42-28.6-16 and the various distinctions within that section of law. The Court finds that it is within the realm of possibility that the Board was encouraged to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence. In the instant case, the decision of the Board does not indicate whether it was, or was not, swayed by the arguments of the prosecutor.
 Responding to Improper Comment
As Plaintiff has argued, the Court needs to evaluate whether the prosecutorial comment was so inflammatory as to prevent the Board's calm and dispassionate examination of the evidence. Padula, 551 A.2d at 691. Although Padula speaks to a criminal context, the policy behind the rationale appears to be similar to the "golden rule" line of cases wherein the fact finder is encouraged to depart from neutrality and to decide the case on the basis of personal interest and bias ratherthan on the evidence. See e.g. Ivy, 585 F.2d at 741.
The Court feels it is important to focus on the "rather than" language of the "golden rule" rationale. The Court cannot say, after reading the entire transcript of the March 1, 2007 closing arguments, and after considering the context of the entire record in this case, that the prosecutor was suggesting the Board decide the case on the basis of personal interest rather than on the evidence. The Court finds that the instance is more akin to overzealousness on the part of the prosecutor. Defendant admits this much in its *Page 26 
memorandum. See Def's Mem. at pg. 33. Defendant also correctly points out that the comment is not totally devoid of any basis in law or fact.Def's Mem.at pg. 33, n. 4. The law clearly indicates that there are at least three distinct scenarios where a Board member can be held liable.See Section 42-28.6-16(1), (2), and (3) above.
Many times a court may give a curative instruction to remedy any harm caused by the improper comment. See e.g. Silveira, 96 R.I. at 388. The attendant facts and circumstances of each case must be carefully evaluated; whether the trial justice exercised proper discretion is an assessment that does not lend itself to any fixed formula. State v.Simpson, 606 A.2d 677, 679 (1992). The Court has already found that the decision of the Board does not indicate whether it was, or was not, swayed by the arguments of the prosecutor. The Superior Court does not have the power to act as a fact finder with regard to the context of charges against a police officer. That power is vested exclusively in the hearing committee. Dionne v. Jalette, 641 A.2d 744, 745 (1994). The proper response is to remand with specific directions to the Board.See Dionne, 641 A.2d at 746. See also, Girard v. Chief, C.A. No. PC 98-5961, 1999 R.I. Super. LEXIS 57, July 9, 1999. (Superior Court, considering Board's decision to discharge officer after some findings were upheld on appeal and other findings were found not supported by sufficient evidence, concluded that there was no finding as to what impact each finding had upon appellant's discharge, the matter required remand to allow for this determination.)
 Remand for Specific Findings with Directions to theBoard
Section 42-28.6-12 states that "appeals from all decisions rendered by the Hearing Committee shall be to the superior court in accordance with § 42-35-15. . . ." Section *Page 27 42-35-15 (g) explicitly provides that the Court may "remand the case for further proceedings."
In the instant matter, this Court finds that the Board's decision regarding its findings on charges 12 and 13 is supported by substantial evidence. This Court also finds that the charges, specifications and findings of fact were not duplicitous to the extent that Plaintiff was terminated because the same acts were used as the basis for several violations which were essentially the same charge. Furthermore, this Court cannot say that the Board's conclusions and findings of fact are totally devoid of competent evidentiary support in the record. It is apparent to the Court that competent evidence exists on the record to support the Board's conclusions.
Lastly, under § 42-35-15(g), this Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." However, this Court is unable to determine from the record or the decision of the Board whether the Board was, or was not, swayed by the arguments of the prosecutor regarding the punishment imposed.
 CONCLUSION
Granting great deference to the judgment of the Board, this Court feels bound to remand this matter for reconsideration and specific written findings with regard to the following instructions of this Court:
 1. This Court has a concern that Board members may have misunderstood the extent of their immunity under the law *Page 28 
and specifically under the provisions of the Law Enforcement Officers' Bill of Rights Act.
 2. The Board shall reconvene and engage in further proceedings.
 3. The Board shall read and review the provisions of § 42-28.6-16 and then vote on whether the Board's decision to terminate Plaintiff's employment was, in any way, related to concern for the personal liability of the individual members of the Board.
 4. The Board shall issue a succinct written and signed decision regarding the result and communicate this decision to the Court.
 5. If the Board, by a majority, indicates that the Board's decision to terminate Plaintiff's employment was not, in any way, related to concern for the personal liability of the individual members of the Board, then the Board's decision is affirmed.
 6. If the Board, by a majority, indicates that the Board's decision to terminate Plaintiff's employment was, in any way, related to concern for the personal liability of the individual members of the Board, then the Board's decision shall be vacated and the matter remanded for the convening of a new hearing board, qualified to comply with the dictates of the statute.
Counsel is directed to submit an appropriate order for entry remanding the case for further determination consistent herewith.
[1] The file contains a voluminous record consisting of transcripts, reports, witness statements, and a written decision all detailing the unfortunate events that occurred that evening. Describing the "bantering" as "good natured" amounts to a euphemism not shared by this Court.
[2] Pursuant to the relevant part of LEOBOR Act, G.L § 42-28-6-11, "The hearing committee shall be empowered to sustain, modify in whole or in part, or reverse the complaint or charges of the investigating authority. . . ." The Court will treat the Board's findings as sustaining or reversing the charges accordingly.
[3] The charges, specifications and findings are set forth verbatim as they appear in the decision of the Board commencing at page 2 thereof.
[5] Counsel also objected at that time to what he referred to as the "empty chair doctrine" being employed. That is irrelevant for the purposes of this appeal. *Page 1